Anthony Marshall SPEARS,
Petitioner–Appellee,

v.

Terry STEWART, Director of the Arizona Department of Corrections,
Respondent–Appellant.

No. 01–99000.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2001

Filed Sept. 24, 2001

Monica Beerling Klapper, Assistant Attorney General, Phoenix, Arizona, for the respondent-appellant.

Sylvia J. Lett and Dale A. Baich, Assistant Federal Public Defenders, Phoenix, Arizona, for the petitioner-appellee.

Julie S. Hall, Tucson, Arizona, for amici curiae.

Before: HILL,* GRABER, and McKEOWN, Circuit Judges.

GRABER, Circuit Judge:

In this interlocutory appeal, we have agreed to answer the following question: "whether Arizona, as of July [17], 1998,[ 1] qualified to opt-in to Chapter 154, Special Habeas Corpus Procedures in Capital Cases, 28 U.S.C. §§ 2261–2266," a part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). We hold that Arizona's mechanism for the appointment of counsel for indigent capital defendants in state post-conviction proceedings met the requirements of Chapter 154 and, accordingly, qualified for opt-in status as of that date. However, we also hold that Arizona is not entitled to enforce the procedures of Chapter 154 in this case, because it did not comply with the timeliness requirement of its own system with respect to Petitioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Anthony Marshall Spears was convicted of first-degree murder and theft and was sentenced to death in 1992. The Arizona Supreme Court affirmed Petitioner's convictions and sentence on direct appeal on January 4, 1996. The Supreme Court of the United States denied certiorari on November 4, 1996. The Arizona Supreme Court neither issued a mandate nor appointed post-conviction counsel at

---

* The Honorable James C. Hill, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. The certified question used the date July *18*, 1998. That appears to be a typographical error; in its order, the district court analyzed whether Arizona had attained opt-in status as of July 17, 1998, the date on which Petitioner's post-conviction counsel was appointed. The mistake is immaterial because the statutes and Arizona Supreme Court rules that formed Arizona's opt-in system were in effect on both dates.

that time, because no willing and qualified lawyers were available to serve.

Petitioner filed his first federal habeas petition pro se on April 11, 1997. He was concerned that his delay in initiating state-court collateral proceedings would affect adversely his ability to seek federal habeas relief. The district court consolidated Petitioner's case with those of 16 other Arizona capital defendants. On March 5, 1998, the court dismissed all the applications for federal habeas relief, without prejudice, for failure to exhaust state remedies. The court also held that none of the limitations periods was running with respect to the capital defendants.

On August 22, 1997, almost a year and eight months after the Arizona Supreme Court had affirmed Petitioner's conviction and sentence, and about ten months after the Supreme Court of the United States had denied certiorari, the Arizona Supreme Court issued the mandate in Petitioner's case and appointed Jess Lorona as Petitioner's counsel for state post-conviction proceedings. On November 26, 1997, the Arizona Supreme Court granted Lorona's motion to withdraw, at the same time recalling the mandate in Petitioner's case. On July 17, 1998, the court re-issued the mandate in Petitioner's case and, again, appointed Lorona as counsel for Petitioner.

Petitioner filed his petition for state post-conviction relief on January 28, 1999, 195 days after Lorona was re-appointed. The Arizona trial court denied the petition. On May 23, 2000, the Arizona Supreme Court denied Petitioner's petition for review. Two days later, it issued the warrant for his execution.

Petitioner filed the habeas petition underlying this interlocutory appeal on June 1, 2000. The next day, the district court granted Petitioner's application for a stay of execution. Respondent Terry Stewart, Director of the Arizona Department of Corrections, moved to dismiss the petition as untimely, arguing that Arizona is an "opt-in" state under 28 U.S.C. § 2261 and that Petitioner's petition was time-barred by the 180-day limitations period in 28 U.S.C. § 2263. The court denied Respondent's motion, holding that Arizona's mechanism for the appointment of counsel in capital cases failed to meet the criteria of § 2261.[2] The district court certified an interlocutory appeal to this court to review its determination that Arizona failed to qualify as an opt-in state at the time counsel was appointed for Petitioner.

## STANDARD OF REVIEW

■ We review de novo the district court's legal conclusions concerning compliance with Chapter 154 of AEDPA. *Ashmus v. Woodford,* 202 F.3d 1160, 1164 (9th Cir.), *cert. denied,* 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000). We review the district court's factual findings for clear error. *Id.*

## DISCUSSION

1. *Whether Arizona's Mechanism for the Appointment of Post–Conviction Counsel for Indigent Capital Defendants Complied with 28 U.S.C. § 2261 of July 17, 1988*

A. *Chapter 154 of AEDPA*

■ Chapter 154 of AEDPA provides a state with procedural benefits in federal

---

**2.** Specifically, the court held that (1) July 17, 1998, was the relevant date for determining whether Arizona met the requirements of Chapter 154 for the purpose of Petitioner's case and that (2) Arizona's system provided (a) for the payment of reasonable litigation expenses, (b) reasonable compensation to appointed counsel, and (c) mandatory and binding competency standards for appointed counsel. However, the court concluded that Arizona's offer of counsel did not comply with 28 U.S.C. § 2261.

habeas cases filed by capital defendants if the state has "opted in" to its provisions. 28 U.S.C. §§ 2261–2266; *Ashmus*, 202 F.3d at 1163. A state with a post-conviction procedure can opt in by establishing a system for the appointment of counsel to represent capital defendants in state post-conviction proceedings.[3] 22 U.S.C. § 2261; *Ashmus*, 202 F.3d at 1162 n. 3. That system must (1) be established by a "statute, rule of its court of last resort, or by another agency authorized by State law," 28 U.S.C. § 2261(b); (2) "offer counsel to all State prisoners under capital sentence," § 2261(c); (3) compensate counsel and pay reasonable litigation expenses, § 2261(b); (4) contain standards of competency for appointed counsel in the statute or court rule, § 2261(b); and (5) provide for the entry of a court order that (a) appoints counsel upon finding either that the defendant is indigent and accepts the offer of counsel *or* that the defendant is unable competently to accept or reject the offer, § 2261(c)(1); (b) finds that the defendant declined the offer of counsel with an understanding of its legal consequences, § 2261(c)(2); or (c) denies the appointment of counsel upon finding that the defendant is not indigent, § 2261(c)(3).

A state with a qualifying system for the appointment of counsel receives procedural benefits under Chapter 154. 28 U.S.C. §§ 2263, 2266; *Ashmus*, 202 F.3d at 1163. First, a capital defendant must file a federal habeas petition within "180 days after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2263(a).[4] Second, the district court must render a decision on the habeas application within 180 days after the date it is filed, and the district court may not extend the period by more than 30 days. § 2266(b)(1)(A) & (b)(1)(C)(i). Third, the court of appeals must decide any appeal from the district court's decision within 120 days after briefing is completed. § 2266(c)(1)(A).

The petitioner receives the benefit of an automatic stay of execution. 28 U.S.C. § 2262. Upon receiving the order granting or denying counsel under a system in compliance with § 2261, the petitioner may apply to any federal district court for an automatic stay of execution, which remains in place throughout all state-court collateral proceedings and federal collateral proceedings, provided that the petitioner meets all other procedural requirements. § 2262.

## B. Arizona's System for the Appointment of Post–Conviction Counsel

■ Respondent contends that two statutes, Arizona Revised Statutes (ARS) §§ 13–4041 and 13–4013, and a rule of criminal procedure, Arizona Rule of Criminal Procedure (Rule) 6.8, together comprised a mechanism for the appointment of counsel that complied with the requirements of Chapter 154 as of July 17, 1998. The Arizona legislature and supreme court promulgated ARS § 13–4041 and Rule 6.8 with the express intention of complying with Chapter 154.[5]

---

3. A state with a "unitary review" system can opt in under 28 U.S.C. § 2265. A unitary review system is one in which "a petitioner is permitted 'to raise, in the course of direct review of the judgment, such claims as could be raised on collateral attack.'" *Ashmus*, 202 F.3d at 1162 n. 3 (quoting 28 U.S.C. § 2265(a)). Arizona does not have a unitary system.

4. If a state has not opted in, a defendant's petition is governed instead by the one-year limitations period in 28 U.S.C. § 2244.

5. That fact distinguishes this case from several previous cases, in which states sought to opt in to Chapter 154 by relying on procedures that antedated AEDPA. *See, e.g., Ashmus v. Woodford*, 202 F.3d 1160 (9th Cir.)

The relevant portions of ARS § 13–4041, which *were in effect on July 17, 1998,* provided: [6]

B. After the supreme court has affirmed a defendant's conviction and sentence in a capital case, the supreme court, or if authorized by the supreme court, the presiding judge of the county from which the case originated shall appoint counsel to represent the capital defendant in the state post-conviction relief proceeding. Counsel shall meet the following qualifications:

1. Membership in good standing of the state bar of Arizona for at least five years immediately preceding the appointment.

2. Practice in the area of state criminal appeals or post-conviction proceedings for at least three years immediately preceding the appointment.

3. No previous representation of the capital defendant in the case either in the trial court or in the direct appeal, unless the defendant and counsel expressly request continued representation and waive all potential issues that are foreclosed by continued representation.

C. The supreme court shall establish and maintain a list of qualified candidates. In addition to the qualifications prescribed in subsection B of this section, the supreme court may establish by rule more stringent standards of competency for the appointment of post-conviction counsel in capital cases. The supreme court may refuse to certify an attorney on the list who meets the qualifications established under subsection B of this section or may remove an attorney from the list who meets the qualifications established under subsection B of this section if the supreme court determines that the attorney is incapable or unable to adequately represent a capital defendant. The court shall appoint counsel pursuant to subsection B of this section from the list.

D. Notwithstanding subsection C of this section, the court may appoint counsel pursuant to subsection B of this section from outside the list of qualified candidates if either:

1. No counsel meets the qualifications under subsections B and C of this section.

2. No qualified counsel is available to serve.

E. Before filing a petition, the capital defendant may personally appear before the trial court and waive counsel. If the trial court finds that the waiver is knowing and voluntary, appointed counsel may withdraw. The time limits in which to file a petition shall not be extended due solely to the change from appointed counsel to self-representation.

F. If at any time the trial court determines that the capital defendant is not indigent, appointed counsel shall no longer be compensated by public monies and may withdraw.

G. Unless counsel is employed by a publicly funded office, counsel appointed to represent a capital defendant in state post-conviction relief proceedings shall be paid an hourly rate of not to exceed one hundred dollars per hour for up to two hundred hours of work, whether or not a petition is filed. . . .

(California), *cert. denied,* 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000); *Mata v. Johnson,* 99 F.3d 1261 (5th Cir.1996) (Texas), *vacated in part on other grounds,* 105 F.3d 209 (5th Cir.1997); *Scott v. Anderson,* 958 F.Supp. 330 (N.D.Ohio 1997) (Ohio); *Wright v. Angelone,* 944 F.Supp. 460 (E.D.Va.1996) (Virginia).

6. This version of the statute remains in effect today.

. . . .

H. On a showing of good cause, the trial court shall compensate appointed counsel from county funds in addition to the amount of compensation prescribed by subsection G of this section by paying an hourly rate in an amount that does not exceed one hundred dollars per hour. The attorney may establish good cause for additional fees by demonstrating that the attorney spent over two hundred hours representing the defendant in the proceedings. The court shall review and approve additional reasonable fees and costs. If the attorney believes that the court has set an unreasonably low hourly rate or if the court finds that the hours the attorney spent over the two hundred hour threshold are unreasonable, the attorney may file a special action with the Arizona supreme court. . . .

. . . .

J. The trial court may authorize additional monies to pay for investigative and expert services that are reasonably necessary to adequately litigate those claims that are not precluded by § 13–4232.

In response to the directive in ARS § 13–4041, the Arizona Supreme Court adopted Rule 6.8, 17 Ariz.Rev.Stat. R.Crim. P. 6.8, "Standards for Appointment of Counsel in Capital Cases." On July 17, 1998,[7] that rule provided, in pertinent part:

a. General. To be eligible for appointment in a capital case, an attorney

(1) Shall have been a member in good standing of the State Bar of Arizona for at least five years immediately preceding the appointment;

(2) Shall have practiced in the area of state criminal litigation for three years immediately preceding the appointment; and

(3) Shall have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.

. . . .

c. Appellate and Post–Conviction Counsel. To be eligible for appointment as appellate or post-conviction counsel, an attorney must meet the qualifications set forth in section (a) of this rule and the following:

(1) Within three years immediately preceding the appointment have been lead counsel in an appeal or post-conviction proceeding in a case in which a death sentence was imposed, as well as prior experience as lead counsel in the appeal of at least three felony convictions and at least one post-conviction proceeding that resulted in an evidentiary hearing. Alternatively, an attorney must have been lead counsel in the appeal of at least six felony convictions, at least two of which were appeals from first or second degree murder convictions, and lead counsel in at least two post-conviction proceedings that resulted in evidentiary hearings.

(2) Have attended and successfully completed, within one year of appointment, at least twelve hours of relevant training or educational programs in the area of capital defense.

d. Exceptional Circumstances. In exceptional circumstances and with the consent of the Supreme Court, an attorney may be appointed who does not meet the qualifications set forth in sections (a)(1) and (2), (b) and (c) of this rule, providing that the attorney's experience, stature and record enable the Court to conclude that the attorney's

7. An amended version of the rule took effect on June 1, 2000. Ariz. R.Crim. P. 6.8 (2001).

ability significantly exceeds the standards set forth in this rule and that the attorney associates with himself or herself a lawyer who does meet the standards set forth in this rule.

Additionally, ARS § 13–4013(B) provided, on July 17, 1998,[8] for the compensation of expert witnesses and investigators in capital proceedings:

When a person is charged with a capital offense the court . . . shall upon application of the defendant and a showing that the defendant is financially unable to pay for such services, appoint such investigators and expert witnesses as are reasonably necessary adequately to present his defense at trial and at any subsequent proceeding. Compensation for such investigators and expert witnesses shall be such amount as the court in its discretion deems reasonable and shall be paid by the county.

Although Respondent has not cited them, we identify three other provisions of Arizona law that were relevant to the appointment of post-conviction counsel on July 17, 1998. First, ARS § 13–4234(D) governed[9] *when* post-conviction counsel had to be appointed:

In capital cases, on the issuance of a mandate affirming the defendant's conviction and sentence on direct appeal, the clerk of the supreme court expeditiously shall file a notice of post-conviction relief with the trial court. On the first notice in capital cases, a defendant has sixty days from the filing of the notice in which to file a petition. The supreme court shall appoint counsel pursuant to § 13–4041, subsection B.

Rule 31.23(b)(1), in turn, governed[10] the timing of the issuance of the mandate in a capital case:

The clerk of the Supreme Court shall issue the mandate in capital cases when the time for filing a petition for a writ of certiorari in the United States Supreme Court from the decision affirming the defendant's conviction and sentence on direct appeal has expired, or, in a case in which a petition for writ of certiorari has actually been filed, when the clerk of the Supreme Court is notified by the United States Supreme Court that the petition has been denied.

Finally, Rule 32.4(c) reconfirmed[11] Arizona's obligation under ARS § 13–4234 to appoint counsel upon the issuance of the notice of post-conviction relief:

Upon the filing of a timely notice in a capital case, . . . the presiding judge shall appoint counsel for the defendant within 15 days if requested and the defendant is determined to be indigent.

### C. *Burden of Proof*

■ Respondent bears the burden of proving that Arizona's mechanism for the appointment of counsel complied with § 2261. *Ashmus,* 202 F.3d at 1164–65. Arizona must "affirmatively establish[ ] that it satisfie[s] each condition in the federal statute." *Id.* at 1164.

### D. *The Opt–In Requirements*

■ The parties do not dispute that the Arizona mechanism provided for the entry of an appropriate court order as required by 28 U.S.C. § 2261(c). On its face, it did. *See* Ariz.Rev.Stat. § 13–4041(B), (E) & (F) (providing that counsel will be appointed

---

8. The same wording remains in force today.

9. The statute remains in the same form today.

10. The rule remains in the same form today.

11. The Arizona Supreme Court amended this rule in 2000. *See* Ariz. R.Crim. P. 32.4 (2001).

by the supreme court, or other court authorized by the supreme court). Neither do the parties dispute that the system met the criterion of § 2261 that it be embodied in either statutes or supreme court rules.[12] Accordingly, we address only whether the other requirements of § 2261 were met, namely, whether the system provided (1) mandatory and binding competency standards for appointed counsel, (2) reasonable compensation for appointed counsel, (3) payment of reasonable litigation expenses, and (4) an offer of post-conviction counsel to all capital defendants.

### (i) *Competency Standards*

■ To obtain the benefits of Chapter 154, Arizona "must provide standards of competency." 28 U.S.C. § 2261(b). Those standards must be "binding and mandatory." *Ashmus*, 202 F.3d at 1167 (construing the identical text in § 2265(a)). The legislative history of Chapter 154 clarifies that Congress did not envision any specific competency standards but, rather, intended the states to have substantial discretion to determine the substance of the competency standards. 137 Cong. Rec. S3191–02, S3220 (daily ed. Mar. 13, 1991) ("The latitude afforded to the states in defining specific standards of counsel competence is also desirable in a new procedure of this type, and would enable all states to learn from experience concerning the most effective means of ensuring competent representation through the exploration of differ-

ent approaches."). The Arizona system met this requirement of Chapter 154.

■ Rule 6.8 established clear qualifications for post-conviction counsel. A lawyer must have been a member in good standing of the Arizona bar for five years or more, must have had recent experience in criminal litigation, and must have demonstrated sufficient proficiency and commitment to handle a capital case. Ariz. R.Crim. P. 6.8(a). Additionally, the lawyer must have had a combination of appellate and post-conviction experience involving felony and murder convictions, and the lawyer also must have participated in recent educational programs on capital defense. Ariz. R.Crim. P. 6.8(b) & (c).

Although subsection (d) of Rule 6.8 authorized the appointment of counsel who did not meet the precise qualifications listed in the rule, this feature did not make the competency standards any less mandatory or binding. The rule required that the qualifications of any lawyer appointed who did not meet the specific criteria of 6.8(a) "*significantly exceed[ ]*" the standards provided by 6.8(a) *and* that the lawyer associate with one who *did* meet the precise qualifications listed in 6.8(a). Ariz. R.Crim. P. 6.8(d) (emphasis added).[13] That is, in *every* case, at least *one* lawyer who met all the listed criteria must have been appointed and involved in the case. Moreover, nothing in the text of § 2261 prohibits a state from adopting two sets of alternative, but equivalent, competency

**12.** Amici argue that Arizona was required to contain its appointment system in a single statute or supreme court rule. There is nothing in the federal law that prohibits a state from establishing its system in both statutes and supreme court rules, so long as that system is coherent. *See, e.g., Ashmus v. Calderon*, 31 F.Supp.2d 1175, 1183 n. 12 (N.D.Cal. 1998) ("Although a single statute or rule of Court is not required, a *system* must be affirmatively established and readily discernable ...." (emphasis in original)), *aff'd*, 202 F.3d

1160 (9th Cir.), *cert. denied*, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000). This case does not present a situation in which the laws involved are found in many out-of-the-way places so as to be inaccessible or incoherent.

**13.** This provision would allow, for example, an excellent capital-defense lawyer from another jurisdiction to associate in an appropriate case.

standards. It is clear that this mechanism ensured that all indigent capital defendants in Arizona were represented in state post-conviction proceedings by counsel who were, at a minimum, as competent as lawyers who met the standards provided in Rule 6.8(a).

Amici argue that Arizona's competency standards were insufficient because they permitted the appointment of a lawyer with no experience defending a capital case. *See* Ariz. R.Crim. P. 6.8(c)(1) (1998) ("Alternatively, an attorney may have been lead counsel in the appeal of at least six felony convictions, at least two of which were appeals from first or second degree murder convictions, and lead counsel in at least two post-conviction proceedings that resulted in evidentiary hearings."). We are not persuaded.

Nothing in 28 U.S.C. § 2261(b) or in logic requires that a lawyer must have capital experience to be competent. Arizona's other standards ensured that appointed counsel *did* possess the capability to handle the post-conviction phase of a capital case. For example, Rule 6.8(a)(3) provided that, to be appointed, a lawyer "[s]hall have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases." Additionally, Rule 6.8(c)(2) required that a lawyer "[h]ave attended and successfully completed, within one year of appointment, at least twelve hours of relevant training or educational programs in the area of capital defense." [14]

Petitioner argues further that ARS § 13–4041(D) eviscerated the competency standards established by Rule 6.8 and by ARS § 13–4041(C), defeating any claim by the State that the standards are mandatory. We do not read the statute in that manner. The text of ARS § 13–4041(D) made discretionary the court's power to appoint counsel who did not meet the qualifications established by statute or rule:

> Notwithstanding subsection C of this section, the court *may* appoint counsel pursuant to subsection B of this section from outside the list of qualified candidates if either:
>
> 1. No counsel meets the qualifications of subsections B and C of this section.
>
> 2. No qualified counsel is available to serve.

(Emphasis added.) However, in promulgating Rule 6.8, the Arizona Supreme Court formally chose not to invoke that discretion. That is, the court bound itself

---

14. Amici argue that this provision should be construed to have authorized the appointment of counsel with *no* relevant training in capital defense, so long as the appointee agreed to meet the educational requirement within a year after appointment. However, the plain text of the rule did not permit a conditional appointment of counsel. It spoke in the past tense: As a *prerequisite* to appointment, the lawyer must "*[h]ave* attended and successfully completed" the CLE requirements, just as the lawyer must "*have* demonstrated the necessary proficiency." (Emphasis added.) Further, the context of the rule weighs against amici's construction. Under Rule 32.4, an appointed lawyer had at most 120 days to initiate post-conviction proceedings. In view of that abbreviated time line, it simply would not make sense to read the rule to permit a lawyer to complete the required CLE courses up to a year following appointment, when the knowledge was needed so soon after appointment.

We acknowledge that the ad hoc committee appointed by the Arizona Supreme Court to identify Arizona lawyers meeting the standards of Rule 6.8 interpreted the rule in the manner advocated by amici. However, in view of the facts that the Arizona Supreme Court itself never adopted that reading and that it does not comport with the text of the rule, we respectfully disagree with that interpretation.

As noted earlier, Rule 6.8 was amended in 2000.

by Rule 6.8 to appoint counsel in capital cases whose qualifications met the competency standards listed therein.

 Even if the statute and the rule were inconsistent, under Arizona law, the statute gives the court the authority to determine whether subsection C is controlling, which the court has determined it is. Thus, Rule 6.8 controlled over ARS § 13–4041(D). Also, in Arizona the regulation of "'the practice of law is a matter exclusively within the authority of the Judiciary. The determination of who shall practice law in Arizona and under what condition is a function placed by the state constitution in'" the Arizona Supreme Court.[15] *In re Creasy*, 198 Ariz. 539, 12 P.3d 214, 216 (2000) (quoting *In re Smith*, 189 Ariz. 144, 939 P.2d 422, 424 (1997)). Although the legislature may, by statute, regulate the practice of law, a court rule governing the practice of law "trumps statutory law." *Id.* at 219; *see also State Bar of Ariz. v. Ariz. Land Title & Trust Co.*, 90 Ariz. 76, 366 P.2d 1, 14 (1961) (en banc), *opinion supplemented*, 91 Ariz. 293, 371 P.2d 1020 (1962) (en banc). Rule 6.8 straightforwardly regulated the practice of law in Arizona by establishing qualifications for court-appointed counsel in capital post-conviction proceedings. Consequently, it "trumped" ARS § 13–4041(D) to the extent that the statutory provision could be read to establish or permit lesser qualifications for post-conviction counsel in a capital case.

In short, the Arizona system for the appointment of post-conviction counsel provided mandatory and binding competency standards on July 17, 1998. Therefore, it complied with 28 U.S.C. § 2261 in that respect.

### (ii) *Compensation*

 Arizona compensated court-appointed lawyers at "an hourly rate of not to exceed one hundred dollars per hour for up to two hundred hours of work, whether or not a petition [was] filed." Ariz.Rev. Stat. § 13–4041(G). Additionally, on a showing of "good cause," defined to include "that the attorney spent over two hundred hours representing the defendant in the proceedings," the court was required to compensate an appointed lawyer at a rate not to exceed $100 an hour. *Id.* § 13–4041(H).

Petitioner argues that a 200–hour presumptive limit does not satisfy the requirement of reasonable compensation. He contends that it is common for post-conviction counsel to spend more than 200 hours on a case and that it is unreasonable to require counsel to demonstrate good cause to obtain fees for more than 200 hours. Again, we are not persuaded.

Section 2261 merely requires that a state establish "a mechanism for the . . . compensation . . . of competent counsel." 28 U.S.C. § 2261(b). ARS § 13–4041 provided the necessary mechanism for compensation. The statute authorized compensation for appointed counsel at a rate of up to $100 an hour, a rate that neither Petitioner nor amici argue was unreasonable. If the court set a rate at less than $100 an hour, and counsel believed that the rate was unreasonable, the statute provided a remedy: a special action in the Arizona Supreme Court. Ariz.Rev.Stat. § 13–4041(H).

With respect to the number of hours to be compensated, the 200–hour threshold in

---

**15.** We note that this principle—that a state supreme court possesses the exclusive authority to regulate the practice of law within its jurisdiction—is not unique to Arizona, but is a principle of blackletter law embraced by many states. Restatement (Third) of Law Governing Law § 1, cmt. c (1998).

no way limited the amount of compensation that post-conviction counsel could receive. By the plain terms of the statute, the court was *required* to compensate a lawyer for hours worked beyond 200, provided only that it did not find them unreasonable.

Contrary to Petitioner's argument, such a compensation mechanism is not, on its face, unduly burdensome to appointed counsel. By the terms of the statute, to receive compensation for hours beyond the threshold, the lawyer needed only to establish that he or she worked more than 200 hours on the case and that the time expended was reasonable. Ariz.Rev.Stat. § 13–4041(H). The simple requirement to account for hours spent is a regular feature of fee requests in almost all criminal and civil contexts in which attorney fees are recoverable from the state or from another party. Indeed, the same requirement exists when a lawyer bills a client. Nothing in Chapter 154 suggests that the mechanism to ensure compensation must be a blank check. The statute simply requires that the appointment mechanism reasonably compensate counsel. Thus, consistent with § 2261, a state can require an appointed lawyer to account for the reasonableness of the number of hours worked before it compensates that lawyer.

We conclude that Arizona's compensation mechanism complied with Chapter 154 on July 17, 1998.

### (iii) *Litigation Expenses*

■ Amici argue that the district court erred in concluding that the Arizona mechanism provided for the payment of reasonable litigation expenses as of July 17, 1998. It did not.

By its terms, ARS § 13–4041(H) required the payment of "reasonable fees and costs." To the extent that ARS § 13–4041(H) could not be read to include fees for investigators and expert witnesses, ARS § 13–4013(B) mandated the payment of such reasonable fees in capital proceedings involving indigent defendants. Therefore, the district court did not err in concluding that Arizona's appointment system provided for the payment of reasonable litigation expenses.

Amici rely on *Chaney v. Stewart*, 156 F.3d 921 (9th Cir.1998). There, we concluded that, under ARS § 13–4013(B), "the trial court has broad discretion to determine whether reasonable necessity has been demonstrated." *Id.* at 925. Amici argue that this holding means that ARS § 13–4013 did not provide for the mandatory payment of reasonable expert and investigator fees. But *Chaney* discussed only whether the appointment and compensation of experts and investigators was mandatory under ARS § 13–4013 in *all* capital cases (whether or not they were reasonably necessary). *Id.* It did not discuss whether the statute mandated compensation for experts and investigators who *were* "reasonably necessary." Although the trial court had discretion to assess the reasonableness of the need for services or the amount of fees, once the court determined that investigative or expert services were "reasonably necessary," the text of the statute *required* that the court pay reasonable fees for them.

Title 28 U.S.C. § 2261(b) requires only that the state mechanism provide for the payment of *reasonable* litigation expenses. The federal statute thus assumes that a state can assess reasonableness as part of its process. The Arizona system met this criterion as of July 17, 1998, by *requiring* the payment of reasonable costs, as well as reasonable fees to investigators and experts, whenever the court deemed them reasonably necessary.

#### (iv) *Arizona's Offer of Post– Conviction Counsel*

The district court held that Arizona's offer of post-conviction counsel did not comply with 28 U.S.C. § 2261 because there was substantial delay in the appointment of counsel in Petitioner's case, as well as in the cases of other similarly situated capital defendants. We disagree. Although we conclude later that Arizona's delay in appointing post-conviction counsel for Petitioner precludes it from benefiting from Chapter 154 in this case, on its face Arizona's offer of counsel met the requirements of § 2261.

#### (a) *The Federal Requirements for an Offer of Counsel*

Title 28 U.S.C. § 2261 requires that a state offer and appoint post-conviction counsel to all indigent capital defendants whose "convictions and sentences have been upheld on direct appeal to the court of last resort." 28 U.S.C. § 2261(b) & (c). It permits the state to decline to appoint counsel only upon a judicial finding that a capital defendant is not indigent, or that a capital defendant voluntarily and competently has declined counsel. *Id.* § 2261(c).

 Although the text of the statute does not specify how soon after affirmance of a defendant's conviction and sentence the state must extend its offer of post-conviction counsel, the context of 28 U.S.C. § 2261, as well as the legislative history of Chapter 154, make it clear that Congress intended that a state extend the offer expeditiously. First, § 2263 states that the limitations period for filing a federal habeas petition in an opt-in state begins to run "after final State court affirmance of the conviction and sentence on direct review," although the time period is tolled during the time a petition for certiorari is pending

in the U.S. Supreme Court. Significantly, the statute does *not* provide for the period to be tolled during the time a petitioner is awaiting appointment of counsel. *See* 28 U.S.C. § 2263 (identifying the bases for tolling the limitations period: (1) pending a petition for certiorari in the Supreme Court; (2) pending state post-conviction proceedings; and (3) good cause (for "an additional period not to exceed 30 days," provided that appropriate motions are made)). That the time for filing a federal habeas petition begins running at the conclusion of the direct appeal, and continues to run even though no counsel has been appointed, implies that Congress intended the states to act quickly in appointing counsel under Chapter 154 and to extend the offer of post-conviction counsel by a time shortly after certiorari is denied by the Supreme Court, in order to ensure that a petitioner—through counsel—commences state post-conviction proceedings before the expiration of the 180–day federal period.

 The legislative history confirms that counsel is to be appointed expeditiously. One of the two primary ills that Congress sought to cure through Chapter 154 was needless delay in the context of capital collateral relief. 135 Cong. Rec. S13471–04, S13482 (finding "unnecessary delay" to be a "serious problem" in capital collateral review). To resolve the problem of delay, Chapter 154 not only imposes the burden on a capital defendant to file a federal habeas petition half a year earlier than in non-opt-in states, but also imposes substantial burdens on the federal courts by requiring them to review and resolve opt-in petitions under mandatory, expedited time lines. 28 U.S.C. § 2266. As we recognized in *Ashmus v. Calderon* 123 F.3d 1199, 1208 (9th Cir.1997),[16] *rev'd on other*

---

**16.** Vacated opinions remain persuasive, al-

though not binding, authority. *Roe v.*

*grounds,* 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970, *vacated,* 148 F.3d 1179 (9th Cir.1998), to permit a state to take advantage of the expedited review procedures in Chapter 154, when the state itself is untimely in meeting its obligation to appoint counsel, would undermine the purpose of Chapter 154. 123 F.3d at 1208 ("California may not take advantage of the six-month limitations period when it takes years to appoint counsel."); *see also Hill v. Butterworth,* 941 F.Supp. 1129, 1145–47 (N.D.Fla.1996) (holding that Chapter 154 required the appointment of counsel immediately upon the conclusion of the state proceedings on direct appeal), *vacated on other grounds,* 147 F.3d 1333 (11th Cir. 1998).

In summary, to comply with Chapter 154, a state must offer counsel to all indigent capital defendants shortly after the later of (1) the conclusion of the defendant's direct appeal in state court or (2) the Supreme Court's disposition of the defendant's petition for certiorari.

### (b) *Arizona's Offer of Counsel*

■ We conclude that the Arizona statutory mechanism for the appointment of post-conviction counsel in effect on July 17, 1998(1) offered counsel to all indigent capital defendants (2) in a timely fashion.

ARS § 13–4041 *mandated* the appointment of post-conviction counsel for *every* capital defendant once the Arizona Supreme Court had affirmed the defendant's conviction and sentence. Ariz.Rev.Stat. § 13–4041(B). Consistent with § 2261, the state was freed from its obligation to pro-

vide post-conviction counsel *only* upon a judicial finding that a defendant (1) was not indigent or (2) competently had waived the appointment of counsel. *Id.*

A review of the appointment mechanism reveals that it required an expeditious appointment of counsel. Rule 31.23(b) provided that the mandate in a capital case "shall issue" either (1) when the Supreme Court of the United States denied certiorari or (2) when the period for filing a petition for a writ of certiorari (90 days under U.S. Sup.Ct. R. 13) expired.[17] In turn, the issuance of the mandate affirming the conviction and sentence of a capital defendant triggered an automatic filing of the notice of post-conviction review. Ariz.Rev.Stat. § 13–4234(D) ("In capital cases, on the issuance of the mandate affirming the defendant's conviction and sentence on direct appeal, the clerk of the supreme court expeditiously shall file a notice of post-conviction relief with the trial court."). Finally, the filing of the notice of post-conviction relief initiated Arizona's obligation to appoint counsel within fifteen days. As of July 17, 1998, Rule 32.4(c) provided in part:

> Upon the filing of a timely notice in a capital case, in a non-capital case, or the second or subsequent notice in a non-capital case which, for the first time raises a claim of ineffective assistance of counsel, the presiding judge shall appoint counsel within 15 days if requested and the defendant is determined to be indigent.

Ariz. R.Crim. P. 32.4(c) (1998).[18] Thus, the Arizona system contemplated that post-

---

*Anderson,* 134 F.3d 1400, 1404 (9th Cir.1998), *aff'd sub nom. Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

**17.** The text of the rule did not provide for any delay in the issuance of the mandate.

**18.** We read the mandate in ARS § 13–4041 that post-conviction counsel be appointed for all capital defendants as a request for counsel made by the Arizona legislature on behalf of all capital defendants, triggering the fifteen-day appointment period under Rule 32.4(c)

conviction counsel would be appointed by a date within fifteen days following the issuance of the notice of post-conviction relief, which, itself, would issue "expeditiously" upon either (1) the Supreme Court's denial of certiorari or (2) the expiration of the 90–day period for filing for certiorari.

Thus, in a normal capital case governed by the Arizona rules, post-conviction counsel should have been appointed within fifteen days after the Supreme Court denied certiorari, or after the 90–day period for filing for certiorari expired. That time line was sufficient to meet the requirements of Chapter 154.

### 2. *Whether Chapter 154 Applies to This Case*

We have concluded that, as of July 17, 1998, Arizona, through statutes and supreme court rules, had established a system that, on its face, entitled the state to opt in to the procedures of Chapter 154. The question remains, however, whether Respondent can invoke opt-in status in this case. We decide that he cannot.

 In order to receive the benefits of Chapter 154 in a particular case, a state must achieve two things. First, the state must have in place a system that meets the federal statutory criteria for the appointment of post-conviction counsel for indigent capital defendants. Second, the state must follow that system in essential particulars. We thus agree with the Fourth Circuit that Chapter 154 requires a state to provide more than just a system that meets the federal standard on paper.

*Tucker v. Catoe,* 221 F.3d 600, 604 (4th Cir.), *cert. denied,* 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). Instead, a state must appoint counsel in compliance with its own system before a federal court will enforce the Chapter 154 time line on its behalf in a particular case. *See id.* ("It would be an astounding proposition if a state could benefit from the capital-specific provisions of AEDPA by enacting, but not following, procedures promulgated pursuant to 28 U.S.C. § 2261.").[19]

 Here, the Supreme Court denied certiorari on November 4, 1996. Yet, post-conviction counsel was not appointed for Petitioner until July 17, 1998—a period of about one year and eight months. We read the Arizona system to have required the appointment of counsel, in a case of this kind, within fifteen days from the date on which the state issued the notice of post-conviction relief (which, in turn, was to issue once Arizona received notification of the denial of certiorari by the Supreme Court). Because timeliness is a requirement at the heart of the post-conviction procedure, and the state failed utterly to meet the extant requirement, we hold that Arizona is not entitled to enforce the procedures of Chapter 154 in Petitioner's case.

### CONCLUSION

We answer the district court's question on interlocutory appeal as follows: As of July 17, 1998, Arizona had established a mechanism for the timely appointment and

---

upon the automatic filing of the notice of post-conviction relief.

**19.** We do not mean to suggest that a state's noncompliance with *any* procedural rule related to the appointment of counsel would preclude it from benefiting from the opt-in procedures. Nor do we suggest that a de minimis noncompliance with an important procedural rule necessarily would preclude reliance on opt-in status. Instead, we read Chapter 154 as requiring a state to comply substantially with those of its procedural rules that are central to the purpose of the chapter: for example, those related to competency of counsel and to the timely appointment of counsel.

compensation of post-conviction counsel in all capital cases, which facially complied with Chapter 154 of AEDPA. Nevertheless, because the appointment of counsel for Petitioner did not comply substantially with the timeliness requirement of that mechanism, Arizona is not entitled to benefit from the expedited procedures in this case.

REMANDED; QUESTION ON INTERLOCUTORY APPEAL ANSWERED.