283 F.3d 992
 Anthony Marshall SPEARS, Petitioner-Appellee,
v.
Terry STEWART, Director of the Arizona Department of Corrections, and Charles Goldsmith,* Warden, Arizona State Prison — Eyman Complex, Respondents-Appellants.
 No. 01-99000.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 2001.
 Filed September 24, 2001.
 Amended March 20, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Monica Beerling Klapper, Assistant Attorney General, Phoenix, AZ, for the respondent-appellant.
 Sylvia J. Lett and Dale A. Baich, Assistant Federal Public Defenders, Phoenix, AZ, for the petitioner-appellee.
 Julie S. Hall, Tucson, AZ, for amici curiae.
 Appeal from the United States District Court for the District of Arizona; Stephen M. McNamee, District Judge, Presiding.
 Before HILL,** GRABER, and McKEOWN, Circuit Judges.
 
 
 1
 REINHARDT, Circuit Judge, with whom Circuit Judges HAWKINS, THOMAS, and PAEZ join dissenting and with whom Circuit Judge TASHIMA joins except as to Part IV(as to which he withholds judgment); Circuit Judge RAWLINSON joins except as to Part IV.A; and Circuit Judges PREGERSON, WARDLAW, W. FLETCHER, FISHER, and BERZON join as to Parts I, II, & III:
 
 
 2
 Opinion by Judge GRABER.
 
 ORDER
 
 3
 The opinion filed September 24, 2001, is amended as follows:
 
 
 4
 On slip opinion page 13530, footnote 2, change to:
 
 
 5
 Specifically, the court held that (1) July 17, 1998, was the relevant date for determining whether Arizona met the requirements of Chapter 154 for the purpose of Petitioner's case and that (2) Arizona's system provided (a) for the payment of reasonable litigation expenses and (b) adequate competency standards for appointed counsel. However, the court concluded that Arizona's offer of counsel did not comply with 28 U.S.C. § 2261 in other respects.
 
 
 6
 On slip opinion page 13551: delete footnote 19.
 
 
 7
 On slip opinion page 13552, line 2: delete "substantially."
 
 
 8
 With these amendments, the panel has voted to deny the petitions for panel rehearing. Judges Graber and McKeown have voted to deny the petitions for rehearing en banc, and Judge Hill has taken no position.
 
 
 9
 The full court was advised of the petitions for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 10
 The petitions for rehearing and petitions for rehearing en banc are DENIED.
 
 
 11
 The decision in this case is similar to that in Bush v. Gore[1] — good for this case and this case only — except that here the decision is not even good for this case. The three judge panel, consisting of two Ninth Circuit judges and one visiting judge, overrode the Chief District Judge for the District of Arizona (a former prosecutor with many years of experience in Arizona) and determined that although: (a) the question whether Arizona had opted-in to the short-fuse habeas scheme provided in Chapter 154 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2261-66, was entirely irrelevant to the outcome of the case before it; (b) the linchpin provision of the procedures by which Arizona had once sought to opt-in under Chapter 154 had already been repealed by the state; (c) the state did not even comply with its own procedures in the case before the panel; (d) Arizona was unquestionably not in compliance with Chapter 154 at the time the appeal was heard; (e) in fact, the state had never at any time effectively complied with its short-lived procedures; and (f) no other state in the nation has ever been held to have successfully opted-in under Chapter 154,[2] the panel would seize this opportunity to issue an advisory opinion stating that the no-longer-existent Arizona procedures were in compliance with Chapter 154's requirements. In doing so, it did not even mention that the critical Arizona provision underlying its "decision" had previously been repealed. Perhaps because the offending portion of the panel's opinion was so patently advisory, affected neither the petitioner nor any other petitioner the panel has been able to identify, and will affect no future petitioners, the call to rehear this matter en banc failed to attract the affirmative votes of a majority of the active non-recused judges notwithstanding that both parties sought an en banc rehearing. Unfortunately, as I have noted on several occasions in the past,[3] our rules preclude us from advising the bar and the public whether there were actually more yes votes than no votes cast (although less than an absolute majority); whether half of the non-recused active judges voted to hear the case en banc, or a lesser number; or describe in any way the margin by which a vote may have failed. In this case, as in all others, I believe the public has a right to know how close the vote was and how each of us exercised our judicial responsibilities; that information would surely be of interest to those concerned about the manner in which the courts and particularly our court functions.
 
 
 12
 In any event, for the reasons set forth below, I disagree with the views of those of my colleagues who thought the case simply not deserving of en banc review, as well as any who may have agreed with the substance of the dicta propounded by the panel. I do so because the fact that the opinion is advisory in nature may not be apparent on its face, and because I believe that the views the panel felt it necessary to express are erroneous. Were the issue not both so novel and so important, I might have agreed with those who concluded that an opinion that has no legal effect should simply be ignored and allowed to die a quiet death. I fear, however, that the district courts of our circuit and other judges in other parts of the country may get the wrong impression of the status of this unprecedented opinion, and apply in other cases its erroneous views on what constitutes compliance with Chapter 154, unless someone points out the lack of precedential or other legal effect. To put it bluntly, neither we, nor any other court is bound by the panel's advisory declarations in this case.
 
 
 13
 I. THIS IS A CASE OF EXCEPTIONAL IMPORTANCE THAT SHOULD HAVE BEEN RE HEARD EN BANC.
 
 
 14
 The issue that the panel actually decided is routine and of no particular significance. As the panel concluded, Arizona did not appoint counsel for Spears in a timely manner under its own procedures; thus, Spears's case was not subject to the abbreviated capital review procedures provided by Chapter 154 of AEDPA. In other words, the panel held that Spears's habeas proceeding is subject to the same rules and procedures as all other capital defendants' throughout the country. This on its face is rather a mundane decision, not even worthy of publication. However, what the panel also purported to decide in the advisory portion of its opinion is both novel and highly consequential. The panel gratuitously proclaimed that Arizona had, as a general matter, opted-in to Chapter 154 by establishing a "timeliness" procedure with which the state did not and could not as a practical matter comply, and by adopting some highly questionable, if not wholly inadequate, provisions regarding attorneys fees and attorney competency standards. The consequences of the panel's unwarranted dictum, if adopted by this court or others in the future, would be enormous.
 
 
 15
 Chapter 154, to which no other state has yet successfully opted-in, provides for a short-fuse system of federal habeas review for capital prisoners for whom the state appoints counsel in accordance with the specific requirements of that Chapter. Under AEDPA, capital prisoners surrender significant post-conviction rights in exchange for what they should be entitled to in any event — competent counsel.[4] What is even more extraordinary about Chapter 154 is that it establishes short time periods within which federal courts must resolve capital habeas cases, regardless of their complexity and regardless of the difficulty courts or counsel may have in obtaining necessary evidence or other materials, including records of the oft-times voluminous state proceedings. The Congressionally-established time limits could well serve to disrupt the dockets, and the ordinary handling of civil and criminal cases, in jurisdictions that cover states that have large backlogs of capital cases, such as Arizona and California. Moreover, the novel procedure raises significant constitutional questions, primarily with respect to the separation of powers between the legislative and judicial branches of government.
 
 
 16
 Given all of the above, the first decision in the nation to announce, albeit in wholly improper dicta, that a state had succeeded in opting-in to Chapter 154 is surely one of national importance that warrants en banc review.
 
 
 17
 II. THE PANEL'S DECISION THAT ARIZONA SUCCESSFULLY OPTED-IN TO THE ABBREVIATED CAPITAL REVIEW PROCEDURES OF CHAPTER 154 CONSTITUTES AN ADVISORY OPINION.
 
 
 18
 The panel's statement that Arizona opted-in to Chapter 154's abbreviated capital review procedures is clearly unnecessary to its resolution of the case, does not affect its outcome in any manner, and constitutes an advisory opinion. The binding portion of the panel opinion holds that Spears is entitled to the one-year AEDPA statute of limitations rather than the abbreviated Chapter 154 procedures because the appointment of counsel in his case did not meet the requirements set forth in the Arizona statutory scheme.[5] Thus, whether or not the Arizona scheme satisfied the requirements of Chapter 154 was entirely irrelevant to the outcome of Spears's case. Spears was entitled to the normal habeas procedures regardless of whether Arizona's now-defunct scheme met the standards for opting-in under that Chapter. Under these circumstances, the panel could and should have avoided the highly controversial question it unnecessarily reached out for and purported to decide. See Anderson v. United States, 417 U.S. 211, 218, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) (stating that it is "inadvisable ... to reach out in this fashion to pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand"). The United States District Court for South Carolina, when faced with a similar situation, did precisely that. In Tucker v. Moore, 56 F.Supp.2d 611, 614 (D.S.C. 1999) (internal citations omitted), the court held that:
 
 
 19
 If the Respondents did not follow their own procedures set forth in [South Carolina statutes] when appointing counsel for the Petitioner ... then the Respondents cannot invoke Chapter 154 of the AEDPA against the Petitioner in this federal habeas action, even assuming [South Carolina statute] does satisfy 28 U.S.C. § 2261(b) and (c). This Court is expressly not passing on the issue of whether [South Carolina statute] meets the requirements of 28 U.S.C. § 2261(b) and (c), because it is not necessary to reach that issue.
 
 
 20
 Because there was no reason for the panel to announce that Arizona had opted-in to Chapter 154's procedures in a case in which it made no difference whether the state had done so, the panel's statements proclaiming its views on that point constitute an advisory opinion. See, e.g., Association of Mexican-American Educators v. California, 231 F.3d 572, 590(9th Cir.2000) (en banc) (declining to address the plaintiffs' Title VI claim because it was unnecessary given the resolution of the identical claim under Title VII and therefore, anything written about the Title VI claim would constitute "an advisory opinion"). The contents of that portion of the panel opinion are entirely dicta. See, e.g., United States v. Henderson, 961 F.2d 880, 882 (9th Cir.1992) (defining dicta as language that is "unnecessary to the court's holding"); United States v. Crespo de Llano, 830 F.2d 1532, 1542 n. 2 (9th Cir.1987) (holding that the court's previous statement that review of a district court determination of the voluntariness of a confession is for clear error was dictum because the court ultimately ruled that the confession in question was not involuntary under either a de novo or a clear error standard).[6]
 
 
 21
 III. THE PANEL'S DECISION THAT ARIZONA SUCCESSFULLY OPTED-IN TO AEDPA's SHORT-FUSE CAPITAL REVIEW PROCEDURES IS PURELY ADVISORY BECAUSE IT RELIES ON A PORTION OF ARIZONA'S STATUTORY SCHEME THAT HAD ALREADY BEEN REPEALED.
 
 
 22
 The panel's decision to reach out and unnecessarily rule on Arizona's opt-in status is particularly egregious because the opinion does not purport to rule that Arizona's then-current (and now-current) system complies with Chapter 154. Rather, the panel, without even mentioning that the Arizona procedure it purported to validate was no longer in effect, proceeded to announce that a statutory system that was once on its books, that did not affect the outcome of petitioner's case, and that Arizona was effectively unable ever to comply with, satisfied Chapter 154. Remarkably, the panel does not state in its opinion that, after the appointment of Spears's counsel but before the panel decided his appeal, Arizona had removed from its statutory scheme the linchpin provision — the provision requiring that indigent capital prisoners receive post-conviction review counsel in a timely manner, specifically within 15 days of either the Supreme Court's denial of certiorari or the expiration of the 90-day time period provided for seeking a writ of certiorari.[7] Yet it is that very provision that the panel relied on to justify its view that Arizona's statutory scheme provided for the timely appointment of post-conviction counsel, as required under Chapter 154. See Spears v. Stewart, 267 F.3d 1026, 1039-41 (9th Cir.2001).
 
 
 23
 The panel also fails to mention that Arizona's statutory scheme was never truly implemented, and was a scheme in name only. When the 15-day appointment requirement was on the books, Arizona routinely violated it in capital cases.[8] The district court opinion, in which Chief Judge McNamee ruled that Arizona's statutory scheme was insufficient to permit it to opt in to Chapter 154's capital procedures, related undisputed evidence that protracted delays in the appointment of counsel were commonplace in the Arizona system.[9] The panel ignored the overwhelming evidence of Arizona's non-compliance with its statutory procedures and ipse dixit announced that the mere formal existence of the 15-day appointment requirement, implemented or not, was sufficient to allow Arizona to opt-in. See Spears, 267 F.3d at 1040-41. At the time the opinion was issued, however, Arizona could no longer purport even to have a timeliness requirement on the books, because it had repealed the 15-day appointment provision with respect to death penalty cases. Thus, Arizona was indisputably not in compliance with AEDPA's Chapter 154 requirements when the panel issued its advisory opinion, and is indisputably not in compliance today.
 
 
 24
 The timely appointment of counsel at the conclusion of direct review is an essential requirement in AEDPA's opt-in structure. See id. at 1039. Because the abbreviated 180-day statute of limitations begins to run immediately upon the conclusion of direct review, time is of the essence. See id. The elimination of the 15-day appointment requirement left Arizona's statutory scheme without any requirement for the timely appointment of counsel. Thus, even if Arizona had once opted-in by virtue of having a paper scheme on the books, — and I do not believe that it had — that status was revoked, in all likelihood retroactively, when it removed the 15-day appointment requirement. Without mentioning the repeal of that requirement, however, the panel relied on the defunct provision as the basis for its unnecessary and unwarranted conclusion that Arizona's procedures complied with Chapter 154 and that the state had therefore qualified for opt-in status. Aside from the fact that I believe the panel was wrong on the merits, I fail to understand why it felt compelled to endorse an illusory statutory scheme that the state itself had already abandoned because it was unable to comply with it, particularly in a case in which its advisory declaration did not affect the outcome of petitioner's claim.
 
 
 25
 IV. THE PANEL'S DECISION IS WRONG ON THE MERITS, BECAUSE ARIZONA'S FORMER STATUTORY SCHEME DID NOT SATISFY THE REQUIREMENTS OF CHAPTER 154.
 
 
 26
 Arizona's now defunct statutory scheme did not comply with Chapter 154's requirements, not only because the state's inability to comply with its own timeliness provisions rendered the procedure illusory at best, but also because Arizona's rules did not require reasonable compensation for post-conviction review counsel and did not ensure that "competent" counsel would be appointed in capital cases.
 
 
 27
 A. Arizona did not (and still does not) provide reasonable compensation standards for post-conviction review counsel.
 
 
 28
 The Arizona statutory scheme fails to establish a mechanism for the reasonable compensation of Arizona's post-conviction capital attorneys, as required by 28 U.S.C. § 2261(b). See also Baker v. Corcoran, 220 F.3d 276, 285 (4th Cir.2000) (holding that a state must provide a mechanism for the payment of reasonable attorney's fees in order to opt-in); Oken v. Nuth, 30 F.Supp.2d 877, 880 (D.Md.1998) (same). Arizona's statute limits the compensation that attorneys may receive to no more than $100 per hour for "up to two hundred hours of work." Ariz. Rev.Stat. § 13-4041(G). It is only if an attorney shows "good cause" that he can be compensated for more than 200 hours. § 13-4041(H).
 
 
 29
 Spears successfully argued before the district court that a 200-hour presumptive limit is facially insufficient for the work of a capital post-conviction attorney and that, therefore, the rule that requires counsel to prove good cause to exceed that threshold is unreasonable. See Spears v. Stewart, No. CV 00-1051-PHX-SMM, at 24-26 (D.Ariz. filed Nov. 21, 2000). Research studies show that state post-conviction proceedings in capital cases generally require far more than 200 hours of preparation. See, e.g., Richard J. Wilson & Robert L. Spangenburg, State Post-Conviction Representation of Defendants Sentenced to Death, 72 Judicature 331, 336 (1989). The state did not provide evidence to the contrary even though, under Ashmus v. Woodford, 202 F.3d 1160, 1164 (9th Cir.2000), cert. denied, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000) [hereinafter Ashmus V], the state has the burden of establishing that it satisfies each opt-in requirement. By failing to support its position that 200 hours is a reasonable threshold, the state failed to meet its burden.
 
 
 30
 Moreover, the Arizona statutory scheme does not provide a minimum hourly rate of compensation for capital post-conviction attorneys. In Baker, 220 F.3d at 285-86, the Fourth Circuit held that paying an attorney $35 an hour was insufficient compensation because "[a] compensation system that results in substantial losses to the appointed attorney or his firm simply cannot be deemed adequate." Because the Arizona statutory scheme has no provision for a minimum hourly rate, it allows for unreasonably low compensation rates in violation of Chapter 154's requirement. The Spears opinion states that, if the court set an unreasonably low rate, "the statute provide[s] a remedy: a special action in the Arizona Supreme Court." Spears, 267 F.3d at 1033. The fact that the unreasonable rate can be appealed, however, does not make it any less unreasonable. Chapter 154 requires that the state's statutory standards provide for reasonable compensation. Arizona's statute does not so provide and the availability of a special remedy in the state supreme court in individual cases does not render the statutory standards adequate to comply with AEDPA.
 
 
 31
 B. Arizona did not (and still does not) have mandatory and binding competency standards for post-conviction review counsel.
 
 
 32
 In order to opt-in to the Chapter 154 procedures, 28 U.S.C. § 2261 requires a state to establish a mechanism for the appointment of counsel for all indigent capital prisoners. Such appointments must be made in conformance with "mandatory and binding" competency standards that the state must establish by statute or rule. See Ashmus V, 202 F.3d at 1167. Arizona Rule of Criminal Procedure 6.8(d), however, provides an escape valve through which the state can bypass the state's competency qualifications for counsel. Specifically, Rule 6.8(d) provides that:
 
 
 33
 In exceptional circumstances and with the consent of the Supreme Court, an attorney may be appointed who does not meet the qualifications set forth in sections (a)(1) and (2), (b) and (c) of this rule, providing that the attorney's experience, stature, and record enable the Court to conclude that the attorney's ability significantly exceeds the standards set forth in this rule and that the attorney associates with himself or herself a lawyer who does meet the standards set forth in this rule. Because this provision affords the state court the discretion to appoint counsel who do not possess the state-established competency qualifications, Arizona fails to meet the requirement that the competency standards for the appointment of counsel be "binding and mandatory." Ashmus V, 202 F.3d at 1167.
 
 
 34
 We have held that "[t]he requirement of competent counsel at all stages of the proceedings would be eviscerated if the decision to follow the standards were left to the discretion of a court or guideline administrator." Id. at 1168 (emphasis added). The panel states that there is no discretion here to bypass the competency requirements because (1) subsection (d) of Rule 6.8 requires that the lawyer's qualifications "significantly exceed[]" the standards provided and (2) the lawyer must associate with one who meets the qualifications listed. The requirement that the lawyer's qualifications "significantly exceed[]" those listed in the rule vests in the court a vast discretion to weigh subjective factors in order to reach a determination of what it means to exceed significantly the listed qualifications, or, indeed, to exceed them at all. Under the Arizona scheme the objective competency standards need not be met where the court concludes in its discretion that an attorney is qualified on the basis of some different and previously unannounced criteria. Because Arizona's scheme affords the court a discretion to "take into consideration" various subjective factors — a discretion similar to that deemed insufficient to satisfy the AEDPA competency requirement in Wright v. Angelone, 944 F.Supp. 460, 466 (E.D.Va. 1996) — it is contrary to Ashmus V.
 
 
 35
 Nor does the requirement of "association" with an attorney who meets the qualifications ensure that an indigent defendant will receive "competent" counsel. "Association" can ordinarily mean anything from merely lending one's name to the pleadings to participating fully in the preparation of the petition, the briefs, and the oral argument. A more definitive provision than Arizona's is required.
 
 
 36
 Moreover, the Arizona statutory scheme permits the appointment of post-conviction lawyers with absolutely no experience handling capital cases on either direct appeal or post-conviction review.[10] While there have been very few federal cases addressing the meaning of the competency standard requirement in Chapter 154, the importance of having a capital experienced attorney has been emphasized. For example, in Wright, 944 F.Supp. at 467 & n. 5, the court held that Virginia's statutory scheme was insufficient to allow Virginia to opt-in to the Chapter 154 procedures. The court stated that, under the Virginia scheme, "there is no requirement that counsel have had any experience with capital cases" and further stated that "it is clear ... that capital cases are unique, not only in the punishment but in the habeas process." Id.
 
 
 37
 The Arizona statutory scheme, rather than providing binding and mandatory standards for the appointment of competent counsel in all post-conviction review cases involving indigent capital prisoners, vests discretion in the court to appoint post-conviction review counsel who have no capital experience and whose competency is measured, not by the qualifications set forth in Arizona's rules, but by whatever indicators of "experience, stature, and record" the court deems appropriate. Ariz. R.Crim. P. 6.8(d).
 
 V. CONCLUSION
 
 38
 The first court in the nation to publish an opinion announcing that a state had successfully opted-in to the capital punishment procedure under AEDPA, a procedure that substantially affects the rights of capital defendants and dramatically, and perhaps unconstitutionally, impinges on the normal operations of the federal courts, should at least await a case in which a resolution of the question is necessary to the determination of the controversy before it. It should not reach out to address the question in dictum when the answer is wholly irrelevant to the outcome of the case before it. The panel's overreaching is particularly egregious in this case because the linchpin provision on which it relied in pronouncing that Arizona had successfully opted-in to Chapter 154's short-fuse procedures had never been effectively implemented and had already been removed from the state's statutory scheme — facts that the panel opinion does not even mention.
 
 
 39
 Not only has the panel reached out to address a novel, complex, and important issue in an advisory opinion based on a no-longer-existent provision of state law, Arizona's statutory scheme failed (and continues to fail) to provide for the reasonable compensation of post-conviction counsel in capital cases and failed (and continues to fail) to establish a mechanism for the appointment of competent counsel for all indigent capital prisoners. Thus, Arizona did not (and still does not) have sufficient procedures to qualify for opt-in status under Chapter 154. While the panel opinion does not purport to hold that Arizona's current procedures entitle it to opt-in status (and clearly they do not), the dictum announced in the advisory portion of the opinion is capable of creating considerable confusion and uncertainty for future courts that may be asked to consider and apply it. For that reason and the others discussed above, I respectfully dissent from my colleagues refusal to rehear this case en banc.
 
 
 40
 Statement of Judge KOZINSKI, with whom Circuit Judges O'SCANNLAIN, T.G. NELSON, GRABER and TALLMAN join, concerning the denial of the petitions for rehearing en banc:
 
 
 41
 For the second time in eight months, judges of this court have advised the public and the other courts of this circuit to ignore portions of an opinion that commands a majority of the panel that decided it. See also United States v. Johnson, 256 F.3d 895, 921 (9th Cir.2001) (Tashima, J., concurring) ("Because they are, in fact, dicta, subsequent panels are not bound either by [the majority's] self-proclaimed `holding' or by [its] purported `overruling' of our prior cases."). For the reasons I explained in Johnson, 256 F.3d at 914-16, this is a dangerous practice that will cause no end of confusion and disarray in our circuit caselaw.
 
 
 42
 Judge Reinhardt, like Judge Tashima in Johnson, argues that a portion of the majority opinion here is "dicta" or "unnecessary" or "an advisory opinion," Dissent at 999, but adds flourishes of his own. See Dissent at 997 (the opinion "has no legal effect [and] should simply be ignored and allowed to die a quiet death"); id. at 998 ("neither we, nor any other court is bound by the panel's advisory declarations in this case"). Whether the portion of the opinion with which Judge Reinhardt disagrees is indeed unnecessary is highly debatable. When a court is confronted with two successive questions, it may legitimately proceed in one of two ways: (1) Decide Question 1 first and then, depending on the outcome, decide Question 2; or (2) if the answer to Question 2 is dispositive, proceed to answer that question only and bypass Question 1.
 
 
 43
 Which of these paths to follow is within the broad discretion judges have in constructing written opinions. Contrary to Judges Reinhardt and Tashima, judges are not bound to skip over any and all issues that might, after full adjudication, appear unnecessary. Not only is there no universal agreement as to what is and is not necessary to decide a particular case, but there can be very good reasons to resolve issues that, after all is said and done, turn out not to have been strictly necessary to the outcome. One such reason is that, in preparing for a case, it is not always obvious which issues need to be decided and which do not. Judges therefore have to study and analyze various questions of law that may turn out not to matter in the end. In fact, not until an opinion is written, and all judges have joined or written separately, can one be certain that resolution of a particular issue is unnecessary to the outcome. Is judicial efficiency and stability better served by discarding this judicial work product, or by leaving it in the opinion, thereby saving future judges and litigants the burden and uncertainty of ploughing the same legal ground? Judges may well answer this question differently in different circumstances, but neither answer is always the more correct or legitimate one. Our caselaw is replete with examples where we have addressed successive questions, instead of assuming the first one away. See, e.g., Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154, 1157-58 (9th Cir.2000) (holding that the plaintiff qualified as "disabled" under the Americans with Disabilities Act, but then finding no liability because the plaintiff failed to show that the defendant could reasonably accommodate her disability); United States v. Chon, 210 F.3d 990, 993-94 (9th Cir.2000) (holding that the Posse Comitatus Act applies to the Naval Criminal Investigative Service, but then holding that the Service's actions did not violate the statute). See also Johnson, 256 F.3d at 914-15 & nn. 6 & 7.
 
 
 44
 In some situations, assuming the first step away may not even be appropriate. When we did so in Katz v. United States, 194 F.3d 962 (1999), the Supreme Court told us that we erred. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In Katz, we had dispensed with the initial inquiry into whether a constitutional right has been violated on the assumption that such inquiry is duplicative of the subsequent qualified immunity analysis, and instead proceeded directly to whether the constitutional right was clearly established. Katz, 194 F.3d at 967-69. The Supreme Court told us that, although the initial inquiry may not prove determinative, it is nevertheless indispensable because it might require the court "to set forth principles which will become the basis for a holding that a right is clearly established." Saucier, 121 S.Ct. at 2155-56.
 
 
 45
 Nor does labeling Part One of the opinion as "advisory," see Dissent at 998, deprive it of precedential force. Whether an opinion presents a live controversy is a jurisdictional question that must be decided by the court while the case is pending. When the court renders a judgment on the merits, this adjudicates all possible jurisdictional objections, including that the opinion is advisory, and precludes subsequent jurisdictional challenges. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)). Judge Reinhardt may disagree with the panel's decision that it faced a live controversy, but that does not change the fact that the panel has resolved the issue and rendered an opinion that is binding as law of the case and law of the circuit.
 
 
 46
 Whether a court ought to speak to an issue that is not strictly necessary to the outcome of the case is a legitimate topic of debate during the process of collegial deliberation. Judges may choose not to join opinions that contain what they see as dicta, or the court may choose to take a case en banc when a panel strays into areas that are best left unexplored. But it is quite a different matter to suggest, as do Judges Reinhardt and Tashima, that the work product of a panel of this court can simply be disregarded because a later panel finds a way to call it "dicta" or "advisory" or some similar invective.
 
 
 47
 As I explained in Johnson, so long as the issue is presented in the case and expressly addressed in the opinion, that holding is binding and cannot be overlooked or ignored by later panels of this court or by other courts of the circuit. Johnson, 256 F.3d at 915-16. This principle is well entrenched in our nation's jurisprudence. The Supreme Court made this absolutely clear over a century ago in Railroad Companies v. Schutte, 103 U.S. 118, 143, 26 L.Ed. 327 (1880), when it stated as follows:
 
 
 48
 It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued, and elaborately considered in the opinion. The decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended.
 
 
 49
 If a judge of our court disagrees with a portion of a published opinion, the proper remedy is to call for en banc, not to undermine it with rhetoric. Lawyers find it hard enough to figure out the law by reading our opinions; it is unwise and inappropriate to make this task harder still by suggesting that some of what purports to be a holding in those opinions can simply be ignored.
 
 
 50
 Part One of the panel's opinion clearly addresses an issue presented by the parties, and does so deliberately and purposefully. See Spears v. Stewart, 267 F.3d 1026, 1030-41 (9th Cir.2001). The opinion was tested during the en banc process and put to a vote of the full court. One can safely assume that what Judge Reinhardt says in his dissent was known to the court, yet a majority of the judges did not vote to rehear the case. Regardless of what Judge Reinhardt may say, this opinion is now the law of the circuit, and will remain so until and unless overruled by the Supreme Court or by an en banc panel in a later case. Let no one be misled by Judge Reinhardt's ruminations to the contrary.
 
 
 
 Notes:
 
 
 *
 Charles Goldsmith is substituted for his predecessor, George Herman, as Warden, Arizona State Prison—Eyman Complex. Fed. R.App. P. 43(c)(2)
 
 
 **
 The Honorable James C. Hill, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)
 
 
 [2]
 See Ashmus v. Woodford, 202 F.3d 1160, 1160 (9th Cir.2000), cert. denied, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000) (California has not opted-in); Harris v. Bowersox, 184 F.3d 744, 748 (8th Cir.1999) (Missouri has not opted-in); Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.1998) (Oklahoma has not opted-in); Hill v. Butterworth, 941 F.Supp. 1129, 1146-47 (N.D.Fla.1996), vacated on other grounds by 147 F.3d 1333 (11th Cir.1998) (Florida has not opted-in); Mata v. Johnson, 99 F.3d 1261, 1267(5th Cir.1996), vacated in part on other grounds, 105 F.3d 209 (5th Cir.1997) (Texas has not opted-in); Austin v. Bell, 126 F.3d 843, 846 n. 3 (6th Cir. 1997) (Tennessee has not opted-in); Holloway v. Horn, 161 F.Supp.2d 452, 478 n. 11 (E.D.Pa.2001) (Pennsylvania has not opted-in); Smith v. Anderson, 104 F.Supp.2d 773, 786 (S.D.Ohio 2000) (Ohio has not opted-in); Oken v. Nuth, 30 F.Supp.2d 877, 879 (D.Md. 1998) (Maryland has not opted-in); Tillman v. Cook, 25 F.Supp.2d 1245, 1253 (D.Utah 1998) (Utah has not opted-in); Weeks v. Angelone, 4 F.Supp.2d 497, 506 n. 4 (E.D.Va.1998) (Virginia has not opted-in); Ryan v. Hopkins, 1996 WL 539220, at *3-4 (D.Neb.1996) (Nebraska has not opted-in).
 
 
 [3]
 See, e.g., In re Silicon Graphics Inc. Securities Litigation, 195 F.3d 521, 523-24 (9th Cir. 1999) (Reinhardt, J., dissenting from denial of en banc review); United States v. Koon, 45 F.3d 1303, 1308-10 (9th Cir.1995) (Reinhardt, J., dissenting from denial of en banc review); Brewer v. Lewis, 997 F.2d 550, 556 (9th Cir.1993) (Reinhardt, J., dissenting from denial of en banc review); Elder v. Holloway, 984 F.2d 991, 1000 (9th Cir.1993) (Reinhardt, J., dissenting from denial of en banc review); Harris v. Vasquez, 949 F.2d 1497, 1539 (9th Cir.1990) (Reinhardt, J., dissenting from denial of en banc review).
 
 
 [4]
 But see Coleman v. Thompson, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (stating that habeas petitioners do not have a constitutional right to effective assistance of counsel); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir.1996) (same).
 
 
 [5]
 Specifically, although Arizona's statutory scheme required the appointment of post-conviction counsel within 15 days of the completion of direct review proceedings, Spears's counsel was appointed 1 year and 8 months after the conclusion of his direct appeal. Such non-compliance with the Arizona procedures was routineSee infra note 8.
 
 
 [6]
 See also Central Green Co. v. United States, 531 U.S. 425, 431, 121 S.Ct. 1005, 148 L.Ed.2d 919 (2001); U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 23, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 121, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (Stevens, J., concurring); Boos v. Barry, 485 U.S. 312, 338, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (Brennan, J., concurring); United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 2185, 150 L.Ed.2d 292 (2001) (Scalia, J., dissenting); Hallstrom v. Tillamook County, 493 U.S. 20, 34 n. *, 110 S.Ct. 304 (1990) (Marshall, J., dissenting); United States v. Enas, 204 F.3d 915, 920 (9th Cir. 2000); Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1154 n. 8 (9th Cir.2000); The Export Group v. Reef Industries, Inc., 54 F.3d 1466, 1472 (9th Cir.1995); United States v. Ramos, 39 F.3d 219, 221 (9th Cir.1994); Operating Engineers Pension Trust v. Charles Minor Equipment Rental, Inc., 766 F.2d 1301, 1307 (9th Cir.1985); McDaniel v. Sanchez, 452 U.S. 130, 141, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981); United States v. Johnson, 256 F.3d 895, 920 (9th Cir.2001) (Tashima, J., concurring).
 While I appreciate the fact that the question certified to this court by the district court was whether Arizona opted-in to Chapter 154, that is by no means dispositive here, because, as we have previously held, "[o]ur jurisdiction [when entertaining interlocutory appeals] ... is not limited to deciding the precise question the district court certified to us. Rather, we... may address any issue fairly included within[the question]." Lee v. American National Insurance Co., 260 F.3d 997, 1000 (9th Cir.2001); see also Tillema v. Long, 253 F.3d 494, 502 n. 11 (9th Cir.2001) (stating that "it is not arguments that are certified, it is issues and claims"). Indisputably, a district court cannot compel this court to issue advisory opinions or even to engage in dicta simply by certifying questions that we either have no jurisdiction to, or should not properly, answer. In such cases, like all others, we follow the rules that generally govern our decision-making. * * * * * *
 
 
 [7]
 At the time Spears's counsel was appointed, Arizona Rule of Criminal Procedure 32.4(c) stated that "[u]pon the filing of a timely notice in a capital case, or the first notice in a non-capital case ... the presiding judge shall appoint counsel for the defendant within 15 days if requested and the defendant is determined to be indigent...."
 In 2000, Arizona amended Rule 32.4 and removed the 15-day appointment requirement. As it is currently written, Rule 32.4(c) states:
 (1) Capital Cases. Upon the filing of the notice by the clerk of the Supreme Court in a capital case, the Supreme Court, or if authorized by the Supreme Court, the presiding judge of the county from which the case originated, shall appoint counsel for the defendant pursuant to A.R.S. § 13-4041 and Rule 6.8 if the defendant is determined to be indigent...
 Neither § 13-4041 nor Rule 6.8 requires that counsel be appointed within any particular time period. Rather, § 13-4041 requires only that counsel be appointed "[a]fter the supreme court has affirmed a defendant's conviction and sentence in a capital case." § 13-4041(B). Rule 6.8 refers to competency standards and not to the timing of counsel's appointment. Therefore, Arizona's present statutory scheme does not ensure the timely appointment of counsel and is indisputably insufficient to permit the state to opt-in to Chapter 154.
 
 
 [8]
 See Petitioner-Appellee's Response to Respondent-Appellant's Petition for Rehearing and Petition for Rehearing En Banc at 10 (stating that Arizona had great difficulty finding counsel within 15 days); Respondents-Appellants' Petition for Rehearing and Petition for Rehearing En Banc at 4-5 (same)
 
 
 [9]
 Specifically, Charles Hedlund waited 2 years and 2 months for post-conviction counsel; Roger Murray waited 1 year and 10 months; Richard Hurles waited 2 years; Danny Jones waited 2 years and 5 months; Darrel Lee waited 1 year and 9 months; Michael Gallegos waited 2 years and 1 month; James McKinney waited 2 years and 6 months; Robert Towery waited 1 year and 10 months; Levi Jackson waited 1 year and 8 months; Kenneth Laird waited 2 years and 1 month; David Hyde waited 1 year and 10 months; Thomas Kemp waited 1 year and 10 months; and Kevin Miles waited 2 years and 1 month. SeeSpears v. Stewart, No. CV 00-1051-PHX-SMM, at 14 (D.Ariz. filed Nov. 21, 2000). It was these facts, set forth in the district court opinion, that Chief Judge McNamee relied on as the basis for his finding that "Arizona has not complied with the timeliness requirement of [AEDPA]." See id. at 17.
 
 
 [10]
 Arizona Rule of Criminal Procedure 6.8(c)(1) (1998) provides that:
 Alternatively, an attorney must have been lead counsel in the appeal of at least six felony convictions, at least two of which were appeals from first or second degree murder convictions, and lead counsel in at least two post-conviction proceedings that resulted in evidentiary hearings.
 It is clear from the statutory language used elsewhere in Arizona Rule of Criminal Procedure 6.8 that the legislature did not intend to require the "first or second degree murder convictions" to be in capital cases. In the first sentence of Rule 6.8(c)(1), the statute refers to a "post-conviction proceeding in a case in which a death sentence was imposed." See also Ariz. R.Crim. P. 6.8(b)(1)(ii) (referring to "capital murder" cases). When the legislature wanted to refer to capital cases, it did so explicitly.
 
 
 OPINION
 GRABER, Circuit Judge:
 
 51
 In this interlocutory appeal, we have agreed to answer the following question: "whether Arizona, as of July [17], 1998,[1] qualified to opt-in to Chapter 154, Special Habeas Corpus Procedures in Capital Cases, 28 U.S.C. §§ 2261-2266," a part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). We hold that Arizona's mechanism for the appointment of counsel for indigent capital defendants in state post-conviction proceedings met the requirements of Chapter 154 and, accordingly, qualified for opt-in status as of that date. However, we also hold that Arizona is not entitled to enforce the procedures of Chapter 154 in this case, because it did not comply with the timeliness requirement of its own system with respect to Petitioner.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 52
 Petitioner Anthony Marshall Spears was convicted of first-degree murder and theft and was sentenced to death in 1992. The Arizona Supreme Court affirmed Petitioner's convictions and sentence on direct appeal on January 4, 1996. The Supreme Court of the United States denied certiorari on November 4, 1996. The Arizona Supreme Court neither issued a mandate nor appointed post-conviction counsel at that time, because no willing and qualified lawyers were available to serve.
 
 
 53
 Petitioner filed his first federal habeas petition pro se on April 11, 1997. He was concerned that his delay in initiating state-court collateral proceedings would affect adversely his ability to seek federal habeas relief. The district court consolidated Petitioner's case with those of 16 other Arizona capital defendants. On March 5, 1998, the court dismissed all the applications for federal habeas relief, without prejudice, for failure to exhaust state remedies. The court also held that none of the limitations periods was running with respect to the capital defendants.
 
 
 54
 On August 22, 1997, almost a year and eight months after the Arizona Supreme Court had affirmed Petitioner's conviction and sentence, and about ten months after the Supreme Court of the United States had denied certiorari, the Arizona Supreme Court issued the mandate in Petitioner's case and appointed Jess Lorona as Petitioner's counsel for state post-conviction proceedings. On November 26, 1997, the Arizona Supreme Court granted Lorona's motion to withdraw, at the same time recalling the mandate in Petitioner's case. On July 17, 1998, the court re-issued the mandate in Petitioner's case and, again, appointed Lorona as counsel for Petitioner.
 
 
 55
 Petitioner filed his petition for state post-conviction relief on January 28, 1999, 195 days after Lorona was re-appointed. The Arizona trial court denied the petition. On May 23, 2000, the Arizona Supreme Court denied Petitioner's petition for review. Two days later, it issued the warrant for his execution.
 
 
 56
 Petitioner filed the habeas petition underlying this interlocutory appeal on June 1, 2000. The next day, the district court granted Petitioner's application for a stay of execution. Respondent Terry Stewart, Director of the Arizona Department of Corrections, moved to dismiss the petition as untimely, arguing that Arizona is an "opt-in" state under 28 U.S.C. § 2261 and that Petitioner's petition was time-barred by the 180-day limitations period in 28 U.S.C. § 2263. The court denied Respondent's motion, holding that Arizona's mechanism for the appointment of counsel in capital cases failed to meet the criteria of § 2261.[2] The district court certified an interlocutory appeal to this court to review its determination that Arizona failed to qualify as an opt-in state at the time counsel was appointed for Petitioner.
 
 STANDARD OF REVIEW
 
 57
 We review de novo the district court's legal conclusions concerning compliance with Chapter 154 of AEDPA. Ashmus v. Woodford, 202 F.3d 1160, 1164 (9th Cir.), cert. denied, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000). We review the district court's factual findings for clear error. Id.
 
 DISCUSSION
 
 58
 1. Whether Arizona's Mechanism for the Appointment of Post-Conviction Counsel for Indigent Capital Defendants Complied with 28 U.S.C. § 2261 as of July 17, 1988
 
 A. Chapter 154 of AEDPA
 
 59
 Chapter 154 of AEDPA provides a state with procedural benefits in federal habeas cases filed by capital defendants if the state has "opted in" to its provisions. 28 U.S.C. §§ 2261-2266; Ashmus, 202 F.3d at 1163. A state with a post-conviction procedure can opt in by establishing a system for the appointment of counsel to represent capital defendants in state post-conviction proceedings.[3] 22 U.S.C. § 2261; Ashmus, 202 F.3d at 1162 n. 3. That system must (1) be established by a "statute, rule of its court of last resort, or by another agency authorized by State law," 28 U.S.C. § 2261(b); (2) "offer counsel to all State prisoners under capital sentence," § 2261(c); (3) compensate counsel and pay reasonable litigation expenses, § 2261(b); (4) contain standards of competency for appointed counsel in the statute or court rule, § 2261(b); and (5) provide for the entry of a court order that (a) appoints counsel upon finding either that the defendant is indigent and accepts the offer of counsel or that the defendant is unable competently to accept or reject the offer, § 2261(c)(1); (b) finds that the defendant declined the offer of counsel with an understanding of its legal consequences, § 2261(c)(2); or (c) denies the appointment of counsel upon finding that the defendant is not indigent, § 2261(c)(3).
 
 
 60
 A state with a qualifying system for the appointment of counsel receives procedural benefits under Chapter 154. 28 U.S.C. §§ 2263, 2266; Ashmus, 202 F.3d at 1163. First, a capital defendant must file a federal habeas petition within "180 days after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2263(a).[4] Second, the district court must render a decision on the habeas application within 180 days after the date it is filed, and the district court may not extend the period by more than 30 days. § 2266(b)(1)(A) & (b)(1)(C)(i). Third, the court of appeals must decide any appeal from the district court's decision within 120 days after briefing is completed. § 2266(c)(1)(A).
 
 
 61
 The petitioner receives the benefit of an automatic stay of execution. 28 U.S.C. § 2262. Upon receiving the order granting or denying counsel under a system in compliance with § 2261, the petitioner may apply to any federal district court for an automatic stay of execution, which remains in place throughout all state-court collateral proceedings and federal collateral proceedings, provided that the petitioner meets all other procedural requirements. § 2262.
 
 
 62
 B. Arizona's System for the Appointment of Post-Conviction Counsel
 
 
 63
 Respondent contends that two statutes, Arizona Revised Statutes (ARS) §§ 13-4041 and 13-4013, and a rule of criminal procedure, Arizona Rule of Criminal Procedure (Rule) 6.8, together comprised a mechanism for the appointment of counsel that complied with the requirements of Chapter 154 as of July 17, 1998. The Arizona legislature and supreme court promulgated ARS § 13-4041 and Rule 6.8 with the express intention of complying with Chapter 154.[5]
 
 
 64
 The relevant portions of ARS § 13-4041, which were in effect on July 17, 1998, provided:[6]
 
 
 65
 B. After the supreme court has affirmed a defendant's conviction and sentence in a capital case, the supreme court, or if authorized by the supreme court, the presiding judge of the county from which the case originated shall appoint counsel to represent the capital defendant in the state post-conviction relief proceeding. Counsel shall meet the following qualifications:
 
 
 66
 1. Membership in good standing of the state bar of Arizona for at least five years immediately preceding the appointment.
 
 
 67
 2. Practice in the area of state criminal appeals or post-conviction proceedings for at least three years immediately preceding the appointment.
 
 
 68
 3. No previous representation of the capital defendant in the case either in the trial court or in the direct appeal, unless the defendant and counsel expressly request continued representation and waive all potential issues that are foreclosed by continued representation.
 
 
 69
 C. The supreme court shall establish and maintain a list of qualified candidates. In addition to the qualifications prescribed in subsection B of this section, the supreme court may establish by rule more stringent standards of competency for the appointment of post-conviction counsel in capital cases. The supreme court may refuse to certify an attorney on the list who meets the qualifications established under subsection B of this section or may remove an attorney from the list who meets the qualifications established under subsection B of this section if the supreme court determines that the attorney is incapable or unable to adequately represent a capital defendant. The court shall appoint counsel pursuant to subsection B of this section from the list.
 
 
 70
 D. Notwithstanding subsection C of this section, the court may appoint counsel pursuant to subsection B of this section from outside the list of qualified candidates if either:
 
 
 71
 1. No counsel meets the qualifications under sub-sections B and C of this section.
 
 
 72
 2. No qualified counsel is available to serve.
 
 
 73
 E. Before filing a petition, the capital defendant may personally appear before the trial court and waive counsel. If the trial court finds that the waiver is knowing and voluntary, appointed counsel may withdraw. The time limits in which to file a petition shall not be extended due solely to the change from appointed counsel to self-representation.
 
 
 74
 F. If at any time the trial court determines that the capital defendant is not indigent, appointed counsel shall no longer be compensated by public monies and may withdraw.
 
 
 75
 G. Unless counsel is employed by a publicly funded office, counsel appointed to represent a capital defendant in state post-conviction relief proceedings shall be paid an hourly rate of not to exceed one hundred dollars per hour for up to two hundred hours of work, whether or not a petition is filed ....
 
 
 76
 ....
 
 
 77
 H. On a showing of good cause, the trial court shall compensate appointed counsel from county funds in addition to the amount of compensation prescribed by subsection G of this section by paying an hourly rate in an amount that does not exceed one hundred dollars per hour. The attorney may establish good cause for additional fees by demonstrating that the attorney spent over two hundred hours representing the defendant in the proceedings. The court shall review and approve additional reasonable fees and costs. If the attorney believes that the court has set an unreasonably low hourly rate or if the court finds that the hours the attorney spent over the two hundred hour threshold are unreasonable, the attorney may file a special action with the Arizona supreme court ....
 
 
 78
 ....
 
 
 79
 J. The trial court may authorize additional monies to pay for investigative and expert services that are reasonably necessary to adequately litigate those claims that are not precluded by § 13-4232.
 
 
 80
 In response to the directive in ARS § 13-4041, the Arizona Supreme Court adopted Rule 6.8, 17 Ariz.Rev.Stat. R.Crim. P. 6.8, "Standards for Appointment of Counsel in Capital Cases." On July 17, 1998,[7] that rule provided, in pertinent part:
 
 
 81
 a. General. To be eligible for appointment in a capital case, an attorney
 
 
 82
 (1) Shall have been a member in good standing of the State Bar of Arizona for at least five years immediately preceding the appointment;
 
 
 83
 (2) Shall have practiced in the area of state criminal litigation for three years immediately preceding the appointment; and
 
 
 84
 (3) Shall have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.
 
 
 85
 ....
 
 
 86
 c. Appellate and Post-Conviction Counsel. To be eligible for appointment as appellate or post-conviction counsel, an attorney must meet the qualifications set forth in section (a) of this rule and the following:
 
 
 87
 (1) Within three years immediately preceding the appointment have been lead counsel in an appeal or post-conviction proceeding in a case in which a death sentence was imposed, as well as prior experience as lead counsel in the appeal of at least three felony convictions and at least one post-conviction proceeding that resulted in an evidentiary hearing. Alternatively, an attorney must have been lead counsel in the appeal of at least six felony convictions, at least two of which were appeals from first or second degree murder convictions, and lead counsel in at least two post-conviction proceedings that resulted in evidentiary hearings.
 
 
 88
 (2) Have attended and successfully completed, within one year of appointment, at least twelve hours of relevant training or educational programs in the area of capital defense.
 
 
 89
 d. Exceptional Circumstances. In exceptional circumstances and with the consent of the Supreme Court, an attorney may be appointed who does not meet the qualifications set forth in sections (a)(1) and (2), (b) and (c) of this rule, providing that the attorney's experience, stature and record enable the Court to conclude that the attorney's ability significantly exceeds the standards set forth in this rule and that the attorney associates with himself or herself a lawyer who does meet the standards set forth in this rule.
 
 
 90
 Additionally, ARS § 13-4013(B) provided, on July 17, 1998,[8] for the compensation of expert witnesses and investigators in capital proceedings:
 
 
 91
 When a person is charged with a capital offense the court ... shall upon application of the defendant and a showing that the defendant is financially unable to pay for such services, appoint such investigators and expert witnesses as are reasonably necessary adequately to present his defense at trial and at any subsequent proceeding. Compensation for such investigators and expert witnesses shall be such amount as the court in its discretion deems reasonable and shall be paid by the county.
 
 
 92
 Although Respondent has not cited them, we identify three other provisions of Arizona law that were relevant to the appointment of post-conviction counsel on July 17, 1998. First, ARS § 13-4234(D) governed[9] when post-conviction counsel had to be appointed:
 
 
 93
 In capital cases, on the issuance of a mandate affirming the defendant's conviction and sentence on direct appeal, the clerk of the supreme court expeditiously shall file a notice of post-conviction relief with the trial court. On the first notice in capital cases, a defendant has sixty days from the filing of the notice in which to file a petition. The supreme court shall appoint counsel pursuant to § 13-4041, subsection B.
 
 
 94
 Rule 31.23(b)(1), in turn, governed[10] the timing of the issuance of the mandate in a capital case:
 
 
 95
 The clerk of the Supreme Court shall issue the mandate in capital cases when the time for filing a petition for a writ of certiorari in the United States Supreme Court from the decision affirming the defendant's conviction and sentence on direct appeal has expired, or, in a case in which a petition for writ of certiorari has actually been filed, when the clerk of the Supreme Court is notified by the United States Supreme Court that the petition has been denied.
 
 
 96
 Finally, Rule 32.4(c) reconfirmed[11] Arizona's obligation under ARS § 13-4234 to appoint counsel upon the issuance of the notice of post-conviction relief:
 
 
 97
 Upon the filing of a timely notice in a capital case, ... the presiding judge shall appoint counsel for the defendant within 15 days if requested and the defendant is determined to be indigent.
 
 C. Burden of Proof
 
 98
 Respondent bears the burden of proving that Arizona's mechanism for the appointment of counsel complied with § 2261. Ashmus, 202 F.3d at 1164-65. Arizona must "affirmatively establish[] that it satisfie[s] each condition in the federal statute." Id. at 1164.
 
 D. The Opt-In Requirements
 
 99
 The parties do not dispute that the Arizona mechanism provided for the entry of an appropriate court order as required by 28 U.S.C. § 2261(c). On its face, it did. See Ariz.Rev.Stat. § 13-4041(B), (E) & (F) (providing that counsel will be appointed by the supreme court, or other court authorized by the supreme court). Neither do the parties dispute that the system met the criterion of § 2261 that it be embodied in either statutes or supreme court rules.[12] Accordingly, we address only whether the other requirements of § 2261 were met, namely, whether the system provided (1) mandatory and binding competency standards for appointed counsel, (2) reasonable compensation for appointed counsel, (3) payment of reasonable litigation expenses, and (4) an offer of post-conviction counsel to all capital defendants.
 
 
 100
 (i) Competency Standards
 
 
 101
 To obtain the benefits of Chapter 154, Arizona "must provide standards of competency." 28 U.S.C. § 2261(b). Those standards must be "binding and mandatory." Ashmus, 202 F.3d at 1167 (construing the identical text in § 2265(a)). The legislative history of Chapter 154 clarifies that Congress did not envision any specific competency standards but, rather, intended the states to have substantial discretion to determine the substance of the competency standards. 137 Cong. Rec. S3191-02, S3220 (daily ed. Mar. 13, 1991) ("The latitude afforded to the states in defining specific standards of counsel competence is also desirable in a new procedure of this type, and would enable all states to learn from experience concerning the most effective means of ensuring competent representation through the exploration of different approaches."). The Arizona system met this requirement of Chapter 154.
 
 
 102
 Rule 6.8 established clear qualifications for post-conviction counsel. A lawyer must have been a member in good standing of the Arizona bar for five years or more, must have had recent experience in criminal litigation, and must have demonstrated sufficient proficiency and commitment to handle a capital case. Ariz. R.Crim. P. 6.8(a). Additionally, the lawyer must have had a combination of appellate and post-conviction experience involving felony and murder convictions, and the lawyer also must have participated in recent educational programs on capital defense. Ariz. R.Crim. P. 6.8(b) & (c).
 
 
 103
 Although subsection (d) of Rule 6.8 authorized the appointment of counsel who did not meet the precise qualifications listed in the rule, this feature did not make the competency standards any less mandatory or binding. The rule required that the qualifications of any lawyer appointed who did not meet the specific criteria of 6.8(a) "significantly exceed[]" the standards provided by 6.8(a) and that the lawyer associate with one who did meet the precise qualifications listed in 6.8(a). Ariz. R.Crim. P. 6.8(d) (emphasis added).[13] That is, in every case, at least one lawyer who met all the listed criteria must have been appointed and involved in the case. Moreover, nothing in the text of § 2261 prohibits a state from adopting two sets of alternative, but equivalent, competency standards. It is clear that this mechanism ensured that all indigent capital defendants in Arizona were represented in state post-conviction proceedings by counsel who were, at a minimum, as competent as lawyers who met the standards provided in Rule 6.8(a).
 
 
 104
 Amici argue that Arizona's competency standards were insufficient because they permitted the appointment of a lawyer with no experience defending a capital case. See Ariz. R.Crim. P. 6.8(c)(1) (1998) ("Alternatively, an attorney may have been lead counsel in the appeal of at least six felony convictions, at least two of which were appeals from first or second degree murder convictions, and lead counsel in at least two post-conviction proceedings that resulted in evidentiary hearings."). We are not persuaded.
 
 
 105
 Nothing in 28 U.S.C. § 2261(b) or in logic requires that a lawyer must have capital experience to be competent. Arizona's other standards ensured that appointed counsel did possess the capability to handle the post-conviction phase of a capital case. For example, Rule 6.8(a)(3) provided that, to be appointed, a lawyer "[s]hall have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases." Additionally, Rule 6.8(c)(2) required that a lawyer "[h]ave attended and successfully completed, within one year of appointment, at least twelve hours of relevant training or educational programs in the area of capital defense."[14]
 
 
 106
 Petitioner argues further that ARS § 13-4041(D) eviscerated the competency standards established by Rule 6.8 and by ARS § 13-4041(C), defeating any claim by the State that the standards are mandatory. We do not read the statute in that manner. The text of ARS § 13-4041(D) made discretionary the court's power to appoint counsel who did not meet the qualifications established by statute or rule:
 
 
 107
 Notwithstanding subsection C of this section, the court may appoint counsel pursuant to subsection B of this section from outside the list of qualified candidates if either:
 
 
 108
 1. No counsel meets the qualifications of subsections B and C of this section.
 
 
 109
 2. No qualified counsel is available to serve.
 
 
 110
 (Emphasis added.) However, in promulgating Rule 6.8, the Arizona Supreme Court formally chose not to invoke that discretion. That is, the court bound itself by Rule 6.8 to appoint counsel in capital cases whose qualifications met the competency standards listed therein.
 
 
 111
 Even if the statute and the rule were inconsistent, under Arizona law, the statute gives the court the authority to determine whether subsection C is controlling, which the court has determined it is. Thus, Rule 6.8 controlled over ARS § 13-4041(D). Also, in Arizona the regulation of "`the practice of law is a matter exclusively within the authority of the Judiciary. The determination of who shall practice law in Arizona and under what condition is a function placed by the state constitution in'" the Arizona Supreme Court.[15] In re Creasy, 198 Ariz. 539, 12 P.3d 214, 216 (2000) (quoting In re Smith, 189 Ariz. 144, 939 P.2d 422, 424 (1997)). Although the legislature may, by statute, regulate the practice of law, a court rule governing the practice of law "trumps statutory law." Id. at 219; see also State Bar of Ariz. v. Ariz. Land Title & Trust Co., 90 Ariz. 76, 366 P.2d 1, 14 (1961) (en banc), opinion supplemented, 91 Ariz. 293, 371 P.2d 1020 (1962) (en banc). Rule 6.8 straightforwardly regulated the practice of law in Arizona by establishing qualifications for court-appointed counsel in capital post-conviction proceedings. Consequently, it "trumped" ARS § 13-4041(D) to the extent that the statutory provision could be read to establish or permit lesser qualifications for post-conviction counsel in a capital case.
 
 
 112
 In short, the Arizona system for the appointment of post-conviction counsel provided mandatory and binding competency standards on July 17, 1998. Therefore, it complied with 28 U.S.C. § 2261 in that respect.
 
 
 113
 (ii) Compensation
 
 
 114
 Arizona compensated court-appointed lawyers at "an hourly rate of not to exceed one hundred dollars per hour for up to two hundred hours of work, whether or not a petition [was] filed." Ariz.Rev. Stat. § 13-4041(G). Additionally, on a showing of "good cause," defined to include "that the attorney spent over two hundred hours representing the defendant in the proceedings," the court was required to compensate an appointed lawyer at a rate not to exceed $100 an hour. Id. § 13-4041(H).
 
 
 115
 Petitioner argues that a 200-hour presumptive limit does not satisfy the requirement of reasonable compensation. He contends that it is common for post-conviction counsel to spend more than 200 hours on a case and that it is unreasonable to require counsel to demonstrate good cause to obtain fees for more than 200 hours. Again, we are not persuaded.
 
 
 116
 Section 2261 merely requires that a state establish "a mechanism for the ... compensation ... of competent counsel." 28 U.S.C. § 2261(b). ARS § 13-4041 provided the necessary mechanism for compensation. The statute authorized compensation for appointed counsel at a rate of up to $100 an hour, a rate that neither Petitioner nor amici argue was unreasonable. If the court set a rate at less than $100 an hour, and counsel believed that the rate was unreasonable, the statute provided a remedy: a special action in the Arizona Supreme Court. Ariz.Rev.Stat. § 13-4041(H).
 
 
 117
 With respect to the number of hours to be compensated, the 200-hour threshold in no way limited the amount of compensation that post-conviction counsel could receive. By the plain terms of the statute, the court was required to compensate a lawyer for hours worked beyond 200, provided only that it did not find them unreasonable.
 
 
 118
 Contrary to Petitioner's argument, such a compensation mechanism is not, on its face, unduly burdensome to appointed counsel. By the terms of the statute, to receive compensation for hours beyond the threshold, the lawyer needed only to establish that he or she worked more than 200 hours on the case and that the time expended was reasonable. Ariz.Rev.Stat. § 13-4041(H). The simple requirement to account for hours spent is a regular feature of fee requests in almost all criminal and civil contexts in which attorney fees are recoverable from the state or from another party. Indeed, the same requirement exists when a lawyer bills a client. Nothing in Chapter 154 suggests that the mechanism to ensure compensation must be a blank check. The statute simply requires that the appointment mechanism reasonably compensate counsel. Thus, consistent with § 2261, a state can require an appointed lawyer to account for the reasonableness of the number of hours worked before it compensates that lawyer.
 
 
 119
 We conclude that Arizona's compensation mechanism complied with Chapter 154 on July 17, 1998.
 
 
 120
 (iii) Litigation Expenses
 
 
 121
 Amici argue that the district court erred in concluding that the Arizona mechanism provided for the payment of reasonable litigation expenses as of July 17, 1998. It did not.
 
 
 122
 By its terms, ARS § 13-4041(H) required the payment of "reasonable fees and costs." To the extent that ARS § 13-4041(H) could not be read to include fees for investigators and expert witnesses, ARS § 13-4013(B) mandated the payment of such reasonable fees in capital proceedings involving indigent defendants. Therefore, the district court did not err in concluding that Arizona's appointment system provided for the payment of reasonable litigation expenses.
 
 
 123
 Amici rely on Chaney v. Stewart, 156 F.3d 921 (9th Cir.1998). There, we concluded that, under ARS § 13-4013(B), "the trial court has broad discretion to determine whether reasonable necessity has been demonstrated." Id. at 925. Amici argue that this holding means that ARS § 13-4013 did not provide for the mandatory payment of reasonable expert and investigator fees. But Chaney discussed only whether the appointment and compensation of experts and investigators was mandatory under ARS § 13-4013 in all capital cases (whether or not they were reasonably necessary). Id. It did not discuss whether the statute mandated compensation for experts and investigators who were "reasonably necessary." Although the trial court had discretion to assess the reasonableness of the need for services or the amount of fees, once the court determined that investigative or expert services were "reasonably necessary," the text of the statute required that the court pay reasonable fees for them.
 
 
 124
 Title 28 U.S.C. § 2261(b) requires only that the state mechanism provide for the payment of reasonable litigation expenses. The federal statute thus assumes that a state can assess reasonableness as part of its process. The Arizona system met this criterion as of July 17, 1998, by requiring the payment of reasonable costs, as well as reasonable fees to investigators and experts, whenever the court deemed them reasonably necessary.
 
 
 125
 (iv) Arizona's Offer of Post-Conviction Counsel
 
 
 126
 The district court held that Arizona's offer of post-conviction counsel did not comply with 28 U.S.C. § 2261 because there was substantial delay in the appointment of counsel in Petitioner's case, as well as in the cases of other similarly situated capital defendants. We disagree. Although we conclude later that Arizona's delay in appointing post-conviction counsel for Petitioner precludes it from benefiting from Chapter 154 in this case, on its face Arizona's offer of counsel met the requirements of § 2261.
 
 
 127
 (a) The Federal Requirements for an Offer of Counsel
 
 
 128
 Title 28 U.S.C. § 2261 requires that a state offer and appoint post-conviction counsel to all indigent capital defendants whose "convictions and sentences have been upheld on direct appeal to the court of last resort." 28 U.S.C. § 2261(b) & (c). It permits the state to decline to appoint counsel only upon a judicial finding that a capital defendant is not indigent, or that a capital defendant voluntarily and competently has declined counsel. Id. § 2261(c).
 
 
 129
 Although the text of the statute does not specify how soon after affirmance of a defendant's conviction and sentence the state must extend its offer of post-conviction counsel, the context of 28 U.S.C. § 2261, as well as the legislative history of Chapter 154, make it clear that Congress intended that a state extend the offer expeditiously. First, § 2263 states that the limitations period for filing a federal habeas petition in an opt-in state begins to run "after final State court affirmance of the conviction and sentence on direct review," although the time period is tolled during the time a petition for certiorari is pending in the U.S. Supreme Court. Significantly, the statute does not provide for the period to be tolled during the time a petitioner is awaiting appointment of counsel. See 28 U.S.C. § 2263 (identifying the bases for tolling the limitations period: (1) pending a petition for certiorari in the Supreme Court; (2) pending state post-conviction proceedings; and (3) good cause (for "an additional period not to exceed 30 days," provided that appropriate motions are made)). That the time for filing a federal habeas petition begins running at the conclusion of the direct appeal, and continues to run even though no counsel has been appointed, implies that Congress intended the states to act quickly in appointing counsel under Chapter 154 and to extend the offer of post-conviction counsel by a time shortly after certiorari is denied by the Supreme Court, in order to ensure that a petitioner — through counsel — commences state post-conviction proceedings before the expiration of the 180-day federal period.
 
 
 130
 The legislative history confirms that counsel is to be appointed expeditiously. One of the two primary ills that Congress sought to cure through Chapter 154 was needless delay in the context of capital collateral relief. 135 Cong. Rec. S13471-04, S13482 (finding "unnecessary delay" to be a "serious problem" in capital collateral review). To resolve the problem of delay, Chapter 154 not only imposes the burden on a capital defendant to file a federal habeas petition half a year earlier than in non-opt-in states, but also imposes substantial burdens on the federal courts by requiring them to review and resolve opt-in petitions under mandatory, expedited time lines. 28 U.S.C. § 2266. As we recognized in Ashmus v. Calderon 123 F.3d 1199, 1208 (9th Cir.1997),[16] rev'd on other grounds, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970, vacated, 148 F.3d 1179 (9th Cir.1998), to permit a state to take advantage of the expedited review procedures in Chapter 154, when the state itself is untimely in meeting its obligation to appoint counsel, would undermine the purpose of Chapter 154. 123 F.3d at 1208 ("California may not take advantage of the six-month limitations period when it takes years to appoint counsel."); see also Hill v. Butterworth, 941 F.Supp. 1129, 1145-47 (N.D.Fla.1996) (holding that Chapter 154 required the appointment of counsel immediately upon the conclusion of the state proceedings on direct appeal), vacated on other grounds, 147 F.3d 1333 (11th Cir.1998).
 
 
 131
 In summary, to comply with Chapter 154, a state must offer counsel to all indigent capital defendants shortly after the later of (1) the conclusion of the defendant's direct appeal in state court or (2) the Supreme Court's disposition of the defendant's petition for certiorari.
 
 
 132
 (b) Arizona's Offer of Counsel
 
 
 133
 We conclude that the Arizona statutory mechanism for the appointment of post-conviction counsel in effect on July 17, 1998(1) offered counsel to all indigent capital defendants (2) in a timely fashion.
 
 
 134
 ARS § 13-4041 mandated the appointment of post-conviction counsel for every capital defendant once the Arizona Supreme Court had affirmed the defendant's conviction and sentence. Ariz.Rev.Stat. § 13-4041(B). Consistent with § 2261, the state was freed from its obligation to provide post-conviction counsel only upon a judicial finding that a defendant (1) was not indigent or (2) competently had waived the appointment of counsel. Id. A review of the appointment mechanism reveals that it required an expeditious appointment of counsel. Rule 31.23(b) provided that the mandate in a capital case "shall issue" either (1) when the Supreme Court of the United States denied certiorari or (2) when the period for filing a petition for a writ of certiorari (90 days under U.S. Sup.Ct. R. 13) expired.[17] In turn, the issuance of the mandate affirming the conviction and sentence of a capital defendant triggered an automatic filing of the notice of post-conviction review. Ariz.Rev.Stat. § 13-4234(D) ("In capital cases, on the issuance of the mandate affirming the defendant's conviction and sentence on direct appeal, the clerk of the supreme court expeditiously shall file a notice of post-conviction relief with the trial court."). Finally, the filing of the notice of post-conviction relief initiated Arizona's obligation to appoint counsel within fifteen days. As of July 17, 1998, Rule 32.4(c) provided in part:
 
 
 135
 Upon the filing of a timely notice in a capital case, in a non-capital case, or the second or subsequent notice in a non-capital case which, for the first time raises a claim of ineffective assistance of counsel, the presiding judge shall appoint counsel within 15 days if requested and the defendant is determined to be indigent.
 
 
 136
 Ariz. R.Crim. P. 32.4(c) (1998).[18] Thus, the Arizona system contemplated that post-conviction counsel would be appointed by a date within fifteen days following the issuance of the notice of post-conviction relief, which, itself, would issue "expeditiously" upon either (1) the Supreme Court's denial of certiorari or (2) the expiration of the 90-day period for filing for certiorari.
 
 
 137
 Thus, in a normal capital case governed by the Arizona rules, post-conviction counsel should have been appointed within fifteen days after the Supreme Court denied certiorari, or after the 90-day period for filing for certiorari expired. That time line was sufficient to meet the requirements of Chapter 154.
 
 2. Whether Chapter 154 Applies to This Case
 
 138
 We have concluded that, as of July 17, 1998, Arizona, through statutes and supreme court rules, had established a system that, on its face, entitled the state to opt in to the procedures of Chapter 154. The question remains, however, whether Respondent can invoke opt-in status in this case. We decide that he cannot.
 
 
 139
 In order to receive the benefits of Chapter 154 in a particular case, a state must achieve two things. First, the state must have in place a system that meets the federal statutory criteria for the appointment of post-conviction counsel for indigent capital defendants. Second, the state must follow that system in essential particulars. We thus agree with the Fourth Circuit that Chapter 154 requires a state to provide more than just a system that meets the federal standard on paper. Tucker v. Catoe, 221 F.3d 600, 604 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). Instead, a state must appoint counsel in compliance with its own system before a federal court will enforce the Chapter 154 time line on its behalf in a particular case. See id. ("It would be an astounding proposition if a state could benefit from the capital-specific provisions of AEDPA by enacting, but not following, procedures promulgated pursuant to 28 U.S.C. § 2261.").
 
 
 140
 Here, the Supreme Court denied certiorari on November 4, 1996. Yet, post-conviction counsel was not appointed for Petitioner until July 17, 1998 — a period of about one year and eight months. We read the Arizona system to have required the appointment of counsel, in a case of this kind, within fifteen days from the date on which the state issued the notice of post-conviction relief (which, in turn, was to issue once Arizona received notification of the denial of certiorari by the Supreme Court). Because timeliness is a requirement at the heart of the post-conviction procedure, and the state failed utterly to meet the extant requirement, we hold that Arizona is not entitled to enforce the procedures of Chapter 154 in Petitioner's case.
 
 CONCLUSION
 
 141
 We answer the district court's question on interlocutory appeal as follows: As of July 17, 1998, Arizona had established a mechanism for the timely appointment and compensation of post-conviction counsel in all capital cases, which facially complied with Chapter 154 of AEDPA. Nevertheless, because the appointment of counsel for Petitioner did not comply with the timeliness requirement of that mechanism, Arizona is not entitled to benefit from the expedited procedures in this case.
 
 
 142
 REMANDED; QUESTION ON INTERLOCUTORY APPEAL ANSWERED.
 
 
 
 Notes:
 
 
 [1]
 The certified question used the date July 18, 1998. That appears to be a typographical error; in its order, the district court analyzed whether Arizona had attained opt-in status as of July 17, 1998, the date on which Petitioner's post-conviction counsel was appointed. The mistake is immaterial because the statutes and Arizona Supreme Court rules that formed Arizona's opt-in system were in effect on both dates
 
 
 [2]
 Specifically, the court held that (1) July 17, 1998, was the relevant date for determining whether Arizona met the requirements of Chapter 154 for the purpose of Petitioner's case and that (2) Arizona's system provided (a) for the payment of reasonable litigation expenses and (b) adequate competency standards for appointed counsel. However, the court concluded that Arizona's offer of counsel did not comply with 28 U.S.C. § 2261 in other respects
 
 
 [3]
 A state with a "unitary review" system can opt in under 28 U.S.C. § 2265. A unitary review system is one in which "a petitioner is permitted' to raise, in the course of direct review of the judgment, such claims as could be raised on collateral attack.'"Ashmus, 202 F.3d at 1162 n. 3 (quoting 28 U.S.C. § 2265(a)). Arizona does not have a unitary system.
 
 
 [4]
 If a state has not opted in, a defendant's petition is governed instead by the one-year limitations period in 28 U.S.C. § 2244
 
 
 [5]
 That fact distinguishes this case from several previous cases, in which states sought to opt in to Chapter 154 by relying on procedures that ante-dated AEDPA. See, e.g.,Ashmus v. Woodford, 202 F.3d 1160 (9th Cir.) (California), cert. denied, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000); Mata v. Johnson, 99 F.3d 1261 (5th Cir.1996) (Texas), vacated in part on other grounds, 105 F.3d 209 (5th Cir.1997); Scott v. Anderson, 958 F.Supp. 330 (N.D.Ohio 1997) (Ohio); Wright v. Angelone, 944 F.Supp. 460 (E.D.Va.1996) (Virginia).
 
 
 [6]
 This version of the statute remains in effect today
 
 
 [7]
 An amended version of the rule took effect on June 1, 2000. Ariz. R.Crim. P. 6.8 (2001)
 
 
 [8]
 The same wording remains in force today
 
 
 [9]
 The statute remains in the same form today
 
 
 [10]
 The rule remains in the same form today
 
 
 [11]
 The Arizona Supreme Court amended this rule in 2000. See Ariz. R.Crim. P. 32.4 (2001)
 
 
 [12]
 Amici argue that Arizona was required to contain its appointment system in a single statute or supreme court rule. There is nothing in the federal law that prohibits a state from establishing its system in both statutes and supreme court rules, so long as that system is coherent. See,e.g., Ashmus v. Calderon, 31 F.Supp.2d 1175, 1183 n. 12 (N.D.Cal. 1998) ("Although a single statute or rule of Court is not required, a system must be affirmatively established and readily discernable...." (emphasis in original)), aff'd, 202 F.3d 1160 (9th Cir.), cert. denied, 531 U.S. 916, 121 S.Ct. 274, 148 L.Ed.2d 199 (2000). This case does not present a situation in which the laws involved are found in many out-of-the-way places so as to be inaccessible or incoherent.
 
 
 [13]
 This provision would allow, for example, an excellent capital-defense lawyer from another jurisdiction to associate in an appropriate case
 
 
 [14]
 Amici argue that this provision should be construed to have authorized the appointment of counsel with no relevant training in capital defense, so long as the appointee agreed to meet the educational requirement within a year after appointment. However, the plain text of the rule did not permit a conditional appointment of counsel. It spoke in the past tense: As a pre-requisite to appointment, the lawyer must "[h]ave attended and successfully completed" the CLE requirements, just as the lawyer must "have demonstrated the necessary proficiency." (Emphasis added.) Further, the context of the rule weighs against amici's construction. Under Rule 32.4, an appointed lawyer had at most 120 days to initiate post-conviction proceedings. In view of that abbreviated time line, it simply would not make sense to read the rule to permit a lawyer to complete the required CLE courses up to a year following appointment, when the knowledge was needed so soon after appointment
 We acknowledge that the ad hoc committee appointed by the Arizona Supreme Court to identify Arizona lawyers meeting the standards of Rule 6.8 interpreted the rule in the manner advocated by amici. However, in view of the facts that the Arizona Supreme Court itself never adopted that reading and that it does not comport with the text of the rule, we respectfully disagree with that interpretation.
 As noted earlier, Rule 6.8 was amended in 2000.
 
 
 [15]
 We note that this principle — that a state supreme court possesses the exclusive authority to regulate the practice of law within its jurisdiction — is not unique to Arizona, but is a principle of blackletter law embraced by many states. Restatement (Third) of Law Governing Law § 1, cmt. c (1998)
 
 
 [16]
 Vacated opinions remain persuasive, although not binding, authorityRoe v. Anderson, 134 F.3d 1400, 1404 (9th Cir.1998), aff'd. sub nom. Saenz v. Roe, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).
 
 
 [17]
 The text of the rule did not provide for any delay in the issuance of the mandate
 
 
 [18]
 We read the mandate in ARS § 13-4041 that post-conviction counsel be appointed for all capital defendants as a request for counsel made by the Arizona legislature on behalf of all capital defendants, triggering the fifteen-day appointment period under Rule 32.4(c) upon the automatic filing of the notice of post-conviction relief